470 P.2d 102

C & T LAND & DEVELOPMENT COMPANY, an Arizona corporation, Appellant,

v.

George BUSHNELL, Receiver, Union Title Company, an Arizona corporation, Paul L. Herrera and Edna Carter Herrera, his wife, James E. Carter, Jr., husband of Connie E. Carter, dealing with his sole and separate property, James R. Carter, Sr., James R. Carter, Jr., as Trustee under Testamentary Trust of Ida R. Carter, Deceased, Appellees.

No. 9881.

Supreme Court of Arizona, In Division.

June 4, 1970.

Rehearing Denied July 7, 1970.

**22**

Langerman, Begam & Lewis, by Frank Lewis, Phoenix, for appellant.

Jones, Brinig & Cooley, by Anthony O. Jones, Phoenix, and Earl P. Platt, St. Johns, for appellees.

UDALL, Justice.

This appeal involves a dispute over the terms of a Trust Agreement wherein defendants (Paul and Edna Herrera, James Carter, Sr. and James Carter, Jr.) as First Beneficiaries, agreed to sell the property which was the subject of the Trust to plaintiff, C & T Land and Development Co., the Second Beneficiary. Plaintiff failed to make one of the annual payments and defendants caused a notice of default to be issued. Plaintiff then commenced this action to forestall the forfeiture of its interest under the Trust, alleging that the Trust by its terms gave plaintiff ten separate annual options to buy land from defendants, and that the failure to exercise an option in any one year was not a default which would allow defendants to forfeit plaintiff's future rights under the Trust. Defendants counterclaimed, seeking a declaration that plaintiff's rights under the Trust Agreement had been forfeited. There were cross motions for summary judgment. The trial court granted defendants' motion and denied plaintiff's; finding as a matter of law that the Trust provided for forfeiture of all of plaintiff's interests on its failure to make any one of the annual payments.

■ Although other issues were tried to the court, plaintiff on appeal challenges only the trial court's rulings of law on the cross motions for summary judgment. Plaintiff here contends that the trial court should have construed the Trust Agreement in its favor and granted its motion for summary judgment. No challenge is made that summary judgment was an improper way to dispose of the issue. There were no questions of fact before the court, and it is well settled law that generally the interpretation of an agreement is a question of law for the court. Kintner v. Wolfe, 102 Ariz. 164, 426 P.2d 798 (1967).

Plaintiff relies solely on Article VII of the Trust Agreement, contending that it created ten separate options; even though the word "option" or "options" is nowhere found in the paragraph or anywhere else in the Agreement. The first full paragraph of Article VII provides:

"The Trust herein provided for is established and exists and shall be operated for the purpose of carrying out the sale by First Beneficiaries to Second Beneficiaries of the property hereinbefore referred to and particularly described, as separate and single transactions as to each annual payment and release of land thereunder and nothing in this agreement shall be construed to nullify this provision, although this shall not revoke the rights or privileges of prepayment, releases and deferred contract sales herein provided; and for such purpose said Trustee shall have the powers, rights and obligations herein set forth and contained."

■ Although plaintiff makes no reference whatsoever to any other provision in the Trust Agreement, and would have us consider the above-quoted paragraph alone, it is axiomatic that any agreement must be construed as a whole, and each part must be read in light of all the other parts. Goodman v. Newzona Investment Co., 101 Ariz. 470, 421 P.2d 318 (1966). With this principle in mind we have scrutinized the entire Trust Agreement and conclude that the trial court correctly disregarded the "ten separate options" theory propounded by plaintiff. There are many factors which support the trial court's conclusion, some of which are as follows:

A. In the introductory clause of the Trust Agreement defendants are established as the owners of the subject property (approximately two Townships) which is then described as a whole. In Paragraph I defendants agree to sell and plaintiff agrees to buy the described property for the full sum of $2,000,000. Paragraph III then acknowledges receipt of $30,000 and sets

forth the manner of payment, and when taken together with the release of property provisions in Paragraph IX–A, results in the following schedule:

| Payment to be Made | Year of Payment | Acres to be released |
|---|---|---|
| $ 200,000.00 | 1962 | 1,000 |
| 200,000.00 | 1963 | 2,000 |
| 177,750.00 | 1964 | 3,555 |
| 177,750.00 | 1965 | 3,555 |
| 177,750.00 | 1966 | 3,555 |
| 177,750.00 | 1967 | 3,555 |
| 177,750.00 | 1968 | 3,555 |
| 177,750.00 | 1969 | 3,555 |
| 177,750.00 | 1970 | 3,555 |
| 177,750.00 | 1971 | 3,555 |
| 178,000.00 | 1972 | 8,000 |
| $2,000,000.00 | | plus leases & improvements |

The total sum of $2,000,000 is consistently referred to in the Trust Agreement as the purchase price and the payments on said purchase price are consistently referred to as annual installments. It will be noted that after the first installment and again after the second installment there is a substantial reduction in the release price per acre, making the first released acreage much more expensive than the later released acreage. Paragraph IX–A provides that parcels may be released to the purchaser (Second Beneficiary) at this reduced price per acre only "when Second Beneficiary is not delinquent in the payment of interest or principal on the *hereinbefore stated purchase price,* and when not in default on account of any other obligations as set forth herein. * * *" (Emphasis supplied) Under plaintiff's "ten separate options" theory, it could refrain from making any payments until 1972 and then obtain 8,000 acres of land, plus State and Federal Leases, plus improvements including two ranch houses, by the payment of $178,000; and no action whatsoever could be taken to forfeit the Trust Agreement in the interim.

Another provision in Paragraph III which is inconsistent with the idea of options is the one which gives plaintiff the privileges of prepaying the entire *unpaid balance,* or any part thereof, without payment of penalty.

B. Plaintiff was not to pay taxes only on released land but as provided for in Paragraph IV, was to pay all of the taxes on all of the land. No exception was made for the contingency that plaintiff might not buy all of the land. Plaintiff was simply to pay all of the taxes on all of the land. In a similar vein, plaintiff obligated itself to pay interest on the entire unpaid balance of the purchase price, beginning with January 7, 1967; and also to furnish, at its sole cost and expense, a $2,000,000 title policy, insuring title to all the property in the Trustee. These factors, though not conclusive, indicate an obligation encompassing all the property, rather than mere options to be exercised over one to ten parts of the whole.

C. Paragraph VIII authorized plaintiff to subdivide but only when not " * * * in default in the payment of any amounts on account of the purchase price of the property as herein provided and the interest thereon, * * *"

D. Paragraph X provides for contiguous releases and describes certain parcels (where improvements are located) which

shall not be released until *all* of the property shall have been released. This Paragraph also provides that unless the full purchase price is paid, the State and Federal Leases will not be assigned to Second Beneficiary.

E. Paragraph XIV states that time is of the essence, and then provides for the method to be followed for forfeiture of the interest of the Second Beneficiary, "If default be made in the payment of *any installment on account of said purchase price* or interest thereon, or upon breach of said Second Beneficiaries [sic] of any covenant, condition or stipulation hereof. * * *" (Emphasis supplied) This same paragraph further provides that:

"In the event first beneficiaries shall elect to enforce a forfeiture hereunder, *all* of the rights of second beneficiaries may be cancelled and forfeited hereunder * * *. Upon such cancellation and forfeiture of the rights of Second Beneficiaries, *all* further sums received from the sale of any unreleased lot or parcel shall be forfeited * * *." (Emphasis supplied)

F. Paragraph XXIII provides for termination of the Trust no later than January 2, 1975, by conveyance of all the property by the Trustee to the Second Beneficiary "if the Second Beneficiaries [sic] shall have *paid the purchase price in full* and any other amounts due and owing to First Beneficiaries." Otherwise, the Trustee is authorized to bring an interpleader action and to make distribution in accordance with the decree.

After considering these particular aforementioned provisions carefully and viewing the entire Trust Agreement as a whole, we can only come to the conclusion that a default by plaintiff, empowered defendants to forfeit plaintiff's future rights under the Trust Agreement with regard to all unreleased property. We can find no basis for plaintiff's contention that the Trust Agreement created separate options relating to different parts of the subject property. Even Paragraph VII, the only one cited by plaintiff in support of its argument, states that the purpose of the trust is to carry out the sale of all of the described property. In a form consistent with the rest of the Agreement, this Paragraph also refers to "annual payments" and "releases of land". The words "option" or "options" are nowhere found in this paragraph or anywhere else in the Agreement. The only phrase in Paragraph VII or in the entire Agreement, which might be construed to lend support to plaintiff's theory is the one which states that the sale is to be carried out " * * * as separate and single transactions as to each annual payment and release of land thereunder * * *" It is not clear exactly what this phrase does mean. It probably means that each annual payment, in addition to reducing the unpaid balance of the purchase price, is also to be considered with the corresponding release of land as a separate transaction in that each payment entitled plaintiff to the release of the designated amount of land, notwithstanding the existence of a sizeable unpaid balance. However, it is unnecessary to speculate as to the precise meaning of that phrase. It is sufficient to say that in light of all the other provisions of the Trust Agreement it does not mean that plaintiff has ten separate options to buy different parts of the subject property.

For the above stated reasons the judgment of the trial court is affirmed.

LOCKWOOD, C. J., and STRUCKMEYER, V. C. J., concur.