473 P.2d 476

MARICOPA COUNTY, Arizona, L. Alton Riggs, William S. Andrews, B. W. Burns, as members of and constituting the Board of Supervisors of Maricopa County, Arizona, C. L. Sparks, Assessor of Maricopa County, John A. Foote, Treasurer of Maricopa County and Cal Boies, Sheriff of Maricopa County, Appellants,

v.

Nick NOVASIC, Appellee.

No. I CA–CIV 1114.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 13, 1970.

**552**

Moise Berger, Maricopa County Atty., by Frederic W. Heineman, Sp. Deputy Atty., for appellants.

Murphy, Posner & Franks, by John R. Franks, Phoenix, for appellee.

JACOBSON, Judge.

In this appeal from the Superior Court of Maricopa County we are asked to determine when title to a certain building erected by a lessee on land owned by the City of Phoenix vests in the underlying fee ownership.

Plaintiff-appellee, Nick Novasic, brought an action against the conglomerate taxing authorities of the County of Maricopa, hereinafter referred to as the defendant, seeking a refund of certain "unsecured personal property" taxes paid by plaintiff under protest. Upon a stipulated set of facts, the trial court entered judgment in favor of the plaintiff as follows: (1) for a refund of the taxes paid by plaintiff for the year 1968 under protest, (2) a declaration that the building erected upon the leased real property was owned by the City of Phoenix and therefore exempt from taxation for ad valorem tax purposes, (3) a direction to the defendant to remove the building from the assessment tax rolls and (4) an injunction against the defendant from assessing the building as long as it remained in an exempt status.[1]

The facts in this case are not in dispute. On January 5, 1960, plaintiff's predecessor in interest entered into a lease with the City of Phoenix, for certain unimproved real property located at the Sky Harbor Airport in Phoenix, Arizona. The term of the lease was for 52 years and the lease required the lessee to erect, at his own expense, an office building on the site. The office building was constructed as required and subsequently plaintiff acquired all of lessee's interest in the lease. In 1968, for the taxable year of 1967, defendant caused the building to be placed on the tax roll and assessed as "unsecured personal property" pursuant to A.R.S. § 42–227 (1956). This assessment resulted in taxes being paid by the plaintiff, under protest, in the sum of $3,239.90.

---

1. Insofar as the injunctive relief portion of the court's order is concerned, we hold that such an injunction is only valid under the limited legal determinations of this specific litigation. § 42–204, A.R.S., 1956 and Smotkin v. Peterson, 73 Ariz. 1, 236 P.2d 743 (1951).

The contention of the parties is relatively simple. The plaintiff contends the building is real property belonging to the City of Phoenix and therefore exempt from taxation under the provisions of the Arizona Constitution. Defendant contends that upon completion of the building title thereto vested in plaintiff and title would not be vested in the City of Phoenix until the happening of certain contingencies and therefore, the building is taxable. Both parties agree the terms of the lease are controlling of this question as a matter of law. Inasmuch as the parties agree that the defendant cannot tax plaintiff's "leasehold interest" as such, we have not considered that specific question, but have limited our attention to the narrow issue presented above.

Defendants' contention that the title to the building is in plaintiff while the lease is in full force and effect is based solely on three provisions of the lease. These are as follows:

(1) "[In the event of default by lessee], Lessor at any time thereafter shall without demand or notice, which the Lessee waives, have full right, at its election to enter upon the leased premises and to take immediate possession thereof and terminate the lease. *In such event, the office building all improvements and fixtures, on said premises shall be retained by and belong to the said Lessor* as liquidated damages * * * and all interest of the Lessee in the lease shall terminate." (Emphasis added.)

(2) "[That upon termination of the lease] the Lessee shall quit and surrender said premises and all improvements thereon, which includes, but is not limited to, the electrical, plumbing, heating and cooling equipment and all other component parts * * * [*which*] *shall thereupon become the property of the Lessor* without compensation by him to the Lessee." (Emphasis added.)

(3) "[In the event of bankruptcy of the Lessee], the Lessor may, by giving the Lessee ten (10) days notice of such election, terminate Lessee's right to possession of the leased premises and terminate this lease and *the title to the building shall then vest in the Lessor.* This lease or the rights hereunder, including the building to be constructed, shall never be considered as an asset of the bankrupt estate." (Emphasis added.)

Defendants argue that these three provisions of the lease "vesting" title to the building in the City upon the happening of certain contingencies, of necessity must be interpreted as "vesting" title in the plaintiff until the happening of these contingencies. We do not believe these provisions of the lease have the effect urged by defendant County. As a general rule, permanent structure placed by a tenant upon leased premises and attached to the realty are deemed to be real property and belong to the lessor. *See* Kinkead v. United States, 150 U.S. 483, 14 S.Ct. 172, 37 L.Ed. 1152 (1893); 1 G. Thompson, Real Property at 253–265 (repl. 1964). This general rule is subject to the exception that the parties by express agreement may treat the building as belonging to the tenant, in which case the right to removal of the building at the termination of the lease is incidental to that ownership. Marcos v. Texas Co., 75 Ariz. 45, 251 P.2d 647 (1953); Williams v. Long, 1 Ariz.App. 330, 402 P.2d 1006 (1965).

Defendant agrees with this general proposition, but urges that the three provisions set forth above evidence an intent that the parties agreed to treat the ownership of the building as being in the lessee and therefore personal property. However, in construing this lease agreement, each part must be read in light of all other parts of the lease. C&T Land and Development Co. v. Bushnell, 106 Ariz. 21, 470 P.2d 102 (1970).

The lease provides that the lessee shall have and hold "the above described prem-

ises *with the appurtenants*" for a period of 52 years; it requires the lessee to erect an office building; it requires the lessee to post a performance bond; and it requires that the building shall only be used as an office building and for no other purposes. The monthly rental under the lease is in a fixed sum or a percentage of the rentals received by the lessee from the building itself whichever is greater. In the event of default by the lessee and the building is subject to a mortgage, the mortgagee is given the right (at a time the defendants would have title vesting in the City of Phoenix) to acquire the *"leasehold interest"* of the lessee.

A right is given to the lessor after a period of ten years to renegotiate "the rental to be paid for the *ground and premises*." Lessor was also given the right to approve all building plans prior to construction. Lessee is required to provide fire insurance on the premises indicating both the lessee and lessor as named insureds. The amount of a policy would be the full replacement cost of the improvements. Lessee was also required to provide plate glass insurance *"for the benefit of lessor * * * covering* the glass in the demised premises." Like insurance is required *"for the benefit of lessor"* on boilers and air conditioning equipment. All proceeds of insurance received by the lessee "shall be used by lessee solely for reconstruction and repair."

The lease also contained the standard clause that "lessee shall not *sublease* any portion of the premises without the written consent of lessor * * *." The provisions in the lease against subletting or assignment would not prevent "a mortgage by lessee of lessee's *leasehold interest*."

A reading of the lease as a whole gives rise to obvious inconsistencies with defendant's position. For example: Basing rentals on occupancy of the building is inconsistent with a lease of the underlying real property only. The use of the words "leasehold interest" in describing the interest that a mortgagee would acquire after default by the lessee is consistent with a

lessor-lessee relationship. The right in lessor to renegotiate the amount of rental for the "ground and premises" is inconsistent with an intent to separate these two ownerships. The fact that insurance proceeds are to be applied solely to reconstruction and repair is evidence that the building is considered to be a permanent structure and an improvement to lessor's real property. The use by the parties of the term "sublease" rather than sale is evidence that they intended lessee to only have a leasehold in the property. The right of lessee to mortgage his "leasehold interest" is inconsistent with lessee's ownership of the building as personal property.

■ We therefore hold that from a reading of the entire lease it is apparent that the parties intended that the title acquired by the tenant in the office building was of a leasehold interest only rather than total ownership of the building of personal property.

What then is the effect of the three provisions relied upon by the defendant? A careful reading of the lease leads to only one conclusion—that the draftor of the lease agreement was attempting to foreclose the possibility that any right of third persons could intervene to defeat lessors' paramount title, or as was stated in People ex rel. International Navigation Co. v. Barker, 153 N.Y. 98, 47 N.E. 46 (1897):

> "When the lease in question provides that the sheds are to become the property of the city at its expiration, the language does not warrant the inference of an intermediate ownership, unless we attach an undue significance to the word 'become' * * * Its use was evidently to prevent any misunderstanding as to a right of removal * * * It was to make the city's ownership definite. The provision followed naturally, and not without some degree of pertinence, upon the obligation imposed upon the lessee to erect a shed." 47 N.E. at 47.

■ We hold because of the absence of clear and express language in this lease evidencing an intent to treat the improve-

ments on the real property as personal property with ownership in the lessee, that the lease intended ownership of all the improvements in the lessor as real property during the term of the lease. The ownership of these buildings being in a governmental body exempt from taxation by the Arizona Constitution, the defendant had no authority to tax the same. City of Phoenix v. Michael, 61 Ariz. 238, 148 P.2d 353 (1944).

Judgment of the trial court affirmed.

EUBANK, P. J., and HAIRE, J., concur.