570 P.2d 190

**John W. HADLEY and Mae Lee Hadley, husband and wife, Appellants,**

v.

**SOUTHWEST PROPERTIES, INC., an Arizona Corporation, and Minnesota Title Company, an Arizona Corporation, Appellees.**

**No. 13156.**

Supreme Court of Arizona, En Banc.

Sept. 28, 1977.

Penterman, Corbet & Grace by John Philip Grace, Phoenix, for appellants.

Burns, Ferrin & Ehrenreich by Arthur D. Ehrenreich, Phoenix, for appellee Southwest Properties, Inc.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Wilbert G. Anderson, Phoenix, for appellee Minnesota Title Co.

HAYS, Justice.

This appeal comes to us by way of rule 47(e)(5), 17A A.R.S., Supreme Court Rules, and raises one issue: Did the trial court correctly grant the defendants' motions for summary judgment?

Plaintiffs John and Mae Lee Hadley are husband and wife. Their complaint, in seven counts, alleges that on or about October 8, 1973, they entered into a trust agreement for the sale of a 320-acre parcel of land. The original buyers, not defendants herein, subsequently assigned all of their interests in the agreement to Southwest Properties, Inc. (hereinafter Southwest), one of the defendants.

The trustee of the agreement, Minnesota Title Company (hereinafter Minnesota), is the other defendant.

In a document entitled "Supplemental Escrow Instructions to Minnesota Title Escrow No. 12,251,171 CDH," signed by the Hadleys and an officer of Southwest, the Hadleys agreed that, in the event of a default or breach on the part of Southwest, they would

"not in any event be entitled to seek an in personam judgment against SOUTHWEST PROPERTIES, INC., . . . and that the sole remedy which the SELLERS shall be entitled to enforce as against SOUTHWEST PROPERTIES, INC., . . . shall be to forfeit the beneficial interest then held by SOUTHWEST PROPERTIES, INC. in and to the real property held under . . . [the] . . . Trust. . . ."

The agreement provided that Southwest would pay a large down payment and,

thereafter, a yearly installment of a set amount. The first yearly installment was due on December 19, 1974. The agreement also provided that

"[u]ntil Trustee shall have received from . . . [the Hadleys] . . . a written instruction declaring this Trust in default, lots into which the property has been subdivided, or portions of the property which have not been subdivided may be released from any further right, title, interest, claim or demand of . . . [the Hadleys] . . . (and Trustee shall convey such portion of the property in accordance with . . . [Southwest's] . . . directions) upon payment to Trustee for the benefit of . . [the Hadleys] . . . of a release price per acre . . . . Any amount paid as a release price shall be applied toward payment of the next principal installment or installments to become due in the order of their maturity . . . ."

Shortly before the first yearly installment was due, Southwest purchased, pursuant to this preceding contract term, and with almost $4,000.00, a 1.25-acre parcel. This parcel contained a well site which was used as a supplemental source of irrigation water for the entire 320-acre parcel of land being sold.

The first count of the complaint alleged that Southwest was not going to be able to make the first yearly installment payment and for that reason it tortiously singled out and bought the 1.25-acre parcel to pressure the plaintiffs into renegotiating the agreement with better terms for Southwest, knowing full well this water was important to the value of all the property. The plaintiffs refused to renegotiate, and, in fact, Southwest did default on the first payment. The complaint seeks punitive damages for the alleged tort committed by Southwest.

Pursuant to the contract, Southwest forfeited all beneficial interest in the remaining land and legal title was retransferred from Minnesota to the Hadleys. The Hadleys then sold the remaining property to other parties for less money than they would have made on the original sale.

The other six counts of their complaint allege breaches of the contract and damages therefor. They argue in their brief that they were "denied proper forfeiture" by both defendants because of this clause in the trust agreement:

"[Southwest] shall have the right of prepayment upon notice to the . . . [Hadleys] . . . ninety (90) days in advance of intent to pay more than the regular payments."

The Hadleys did not receive ninety days notice before Southwest paid for the 1.25-acre parcel.

Both Southwest and Minnesota moved for a summary judgment based on the fact that the completion of forfeiture of Southwest's beneficial interest terminated the contract and was the plaintiff's sole remedy against the defendants, in tort or contract. They argued successfully to the trial court that the ninety-day notice requirement did not apply to the transaction in question because, clearly, the less than $4,000.00 paid for the 1.25-acre parcel was not "more than the regular payment". Their motions were granted, and this appeal followed. We are of the opinion the trial court correctly granted summary judgment.

■ Before granting a motion for summary judgment, the trial court must consider all the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Chanay v. Chittenden*, 115 Ariz. 32, 563 P.2d 287 (1977); 16 A.R.S. Rules of Civil Procedure, rule 56(c). The only pleadings before the court were the (amended) complaint and Minnesota's answer, counterclaim and cross-claim. The only affidavit on file was in support of Southwest's motion for summary judgment and was by Jerome H. Levy, a trust officer of Minnesota. No depositions, interrogatories or admissions were filed by any party. In reply to the motion for summary judgment, plaintiffs filed no affidavits at all; just a memorandum of points and authorities. After reviewing these documents and the

contract language, we come to the unavoidable conclusion that the parties moving for summary judgment made a prima facie showing that no issue of material fact existed for trial. *City of Phoenix v. Space Data Corp.*, 111 Ariz. 528, 534 P.2d 428 (1975). Since the facts supporting the motion were uncontroverted by the plaintiffs, we must presume them to be true. *W. J. Kroeger Co. v. Travelers Indemnity Co.*, 112 Ariz. 285, 541 P.2d 385 (1975).

▮ The interpretation of the contract is a question of law for the court. *C & T Land & Development Co. v. Bushnell*, 106 Ariz. 21, 470 P.2d 102 (1970). Where the language of the contract is clear and unambiguous, it must be given effect as it is written. *Vinnell Corp. v. State ex rel. Bob Skousen Contr. Inc.*, 109 Ariz. 87, 505 P.2d 547 (1973). Here it seems clear to us, as it must have to the trial court, that the plaintiffs exercised their sole remedy under the contract and have no further cause of action against the defendants on it.

> "The parties to a contract may specify certain remedies which may be used in case of breach. They may in addition make such a provision the exclusive remedy or remedies, barring all others which would otherwise be available. To obtain this result, however, the intent of the parties must be . . . clear. [Cite omitted.]" *Zancanaro v. Cross*, 85 Ariz. 394, 399, 339 P.2d 746, 750 (1959).

The clear intent of the parties here was that the only remedy the plaintiffs would have in the event of breach was forfeiture. That remedy was exercised; plaintiffs can seek no further damages against either defendant.*

Equally clear is the interpretation of the ninety-day notice clause. The small amount paid for the parcel in question was nowhere near the amount of the regular installment payments. The trial court did not err in that respect either.

With regard to the tort alleged in count one of the complaint, no name is attached to it by the plaintiffs. Our research, however, reveals that the count attempts to allege what one writer has characterized as "interference with prospective advantage." *See* Prosser, *The Law of Torts* (4th Ed. 1971), § 130. Others term it "interference with reasonable economic expectancies." *See* Harper & James, *The Law of Torts*, § 6.11. It is a tort which has developed in a parallel manner to "interference with an existing contract," and like that tort, a person may be privileged to commit the interference. *See generally Restatement of Torts*, §§ 766 to 774.

▮ Plaintiffs here do not allege that Southwest committed a tort in breaching the contract; they allege it committed a tort by exercising a right given it by the contract.

> "A person who otherwise would be liable for a tort is not liable where he acts in pursuance of and within the limits of a privilege of his own or of a delegable privilege of another." *Restatement of Torts*, § 890.

Although another interference with the future value of someone's land might very well be actionable, where the interference is the result of the exercise of a lawful contract privilege, we do not see how it can be actionable as a tort. Further, a malicious motive does not render unlawful acts which in themselves are lawful. *Ulan v. Lucas*, 18 Ariz.App. 129, 500 P.2d 914 (1972); *Beardsley v. Kilmer*, 200 A.D. 378, 193 N.Y.S. 285 (1922), *aff'd* 236 N.Y. 80, 140 N.E. 203 (1923). While we are well aware of cases which contain exceptions to this rule, *see* Harper & James, *supra*, § 6.12, the exceptions are usually applied where the motive is totally and purely malicious, and there is no purpose at all to advance the defendant's own interests. Here, the plaintiffs themselves allege that part of Southwest's mo-

---

* There are no allegations that Minnesota violated any fiduciary duties with regard to the "breach," and the uncontroverted record shows Minnesota complied fully with its duties and responsibilities under the written trust agreement.

tive was to secure a renegotiated contract with more favorable terms for itself. The motive could not then have been purely malicious; *i. e.*, with no purpose but to destroy the future resale value of plaintiffs' land.

There being a lawful contract right to obtain the well-site parcel, and there appearing no purely malicious motive for the exercise thereof, the plaintiffs cannot make the act a tort by simply alleging that it is one.

The order of the trial court granting summary judgment on all counts of the complaint is affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concurring.