18 P.3d 143

**HAVASU SPRINGS RESORT COMPANY, an Arizona limited liability company; and Robert Atkins and Harrison Burnett dba Havasu Springs Resort, Plaintiffs–Appellants,**

v.

**LA PAZ COUNTY, a political subdivision of the State of Arizona; and the Department of Revenue of the State of Arizona, Defendants Appellees.**

No. 1 CA–TX 00–0012.

Court of Appeals of Arizona, Division 1, Department T.

Feb. 1, 2001.

Review Denied May 23, 2001.

Nearhood Law Offices, PLC, by Richard D. Nearhood, Howard J. Weiss, Scottsdale, Attorneys for Plaintiffs–Appellants.

La Paz County Attorney, by R. Glenn Buckelew, County Attorney, Parker, Attorneys for Defendants–Appellees.

### OPINION

LANKFORD, Presiding Judge

¶ 1 Havasu Springs Resort Company ("Havasu") appeals from a summary judgment

sustaining ad valorem taxation of buildings on federal land occupied and used by Havasu in its business. The appeal requires us to determine whether Havasu is the owner of improvements it constructed on land leased from the United States Bureau of Land Management ("BLM"). If Havasu is not the owner, and its interest instead is merely possessory, that interest is not subject to the tax. The undisputed facts show that Havasu is not the owner. Accordingly, we reverse and remand for the entry of judgment in Havasu's favor.

¶ 2 The material facts are not in dispute. The improvements constructed by Havasu included recreational vehicle sites and a motel expansion. La Paz County ("the County") concedes that these improvements constitute real property. On appeal from summary judgment in a case in which the material facts are not in dispute, we determine whether the lower court correctly applied the law and whether the movant was entitled to summary judgment as a matter of law. *Blum v. State*, 171 Ariz. 201, 203–04, 829 P.2d 1247, 1249–50 (App.1992). Our review is de novo in such an appeal. *See United Bank v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990). When, as here, "cross-motions are filed, we may enter summary judgment as a matter of law for a party if the trial court erroneously entered summary judgment against that party." *Aaron v. Fromkin*, 196 Ariz. 224, 227, ¶ 10, 994 P.2d 1039, 1042 (App.2000).

¶ 3 A lessor, as the owner of the land, generally owns permanent improvements on the land. "[P]ermanent structure[s] placed by a tenant upon leased premises and attached to the realty are deemed to be real property and belong to the lessor." *Maricopa County v. Novasic*, 12 Ariz.App. 551, 553, 473 P.2d 476, 478 (1970).

¶ 4 "However, [t]his general rule is subject to the exception that the parties by express agreement may treat the building as belonging to the tenant. . . ." *Id.* The parties to a lease can treat improvements as the lessee's by granting control over the improvement to the lessee. "[T]he *sine qua non* of ownership is the right to control and dispose of the asset." *Cutter Aviation, Inc., v. Arizona Dep't of Revenue*, 191 Ariz. 485, 490–91, 958 P.2d 1, 6–7 (App.1997). "On the other hand, where the putative taxpayer leases property and the lease significantly restricts the lessee's authority to control and dispose of the improvements thereon, the lessee should not be considered to be the 'owner' of the improvements." *Id.* at 491, 958 P.2d at 7; *accord Airport Properties v. Maricopa County*, 195 Ariz. 89, 93–97, 985 P.2d 574, 578–82 (App.1999).

¶ 5 The improvements that Havasu built are owned by the United States Government. The parties' lease did not override the general rule by treating them as Havasu's property. On the contrary, the lease imposed significant restrictions on Havasu's ability to control and dispose of the improvements. Moreover, far from containing "clear and express language . . . evidencing an intent to treat the improvements . . . as personal property with ownership in the lessee," *Novasic*, 12 Ariz.App. at 554–55, 473 P.2d at 479–80, the Havasu BLM lease contains clear language demonstrating the opposite intent.

¶ 6 The lease provisions clearly stated that Havasu has no ownership interest in the improvements it built on the BLM leased land. The lease provided, for example:

All items, realty in nature, are the property of the Government. All replacement items, personal in nature, are the property of the Concessioner.

¶ 7 In requiring that the lessee deposit funds for repairs, maintenance, and replacement for repair, rehabilitation, or improvements, the BLM lease referred to "Government Owned Facilities." Elsewhere, the lease required Havasu to return the land to natural conditions at its own expense "[i]n the event that a *Government improvement* is removed, abandoned, demolished, prevented from use or substantially destroyed. . . ." (Emphasis added.)

¶ 8 The lease also stated: "Nothing in this lease vests in the Concessioner any property interests in the Federal lands described herein." At oral argument, the County conceded that this language applies to permanent improvements that are real property.

¶ 9 In a section labeled "Real Property," the lease defined Havasu's interest as merely possessory and subject to limitations described elsewhere in the document:

Real Property shall not be removed, improved, or rehabilitated without the authorization of the [BLM], however, the Concessioner shall have the following lease rights relating to such property:

1. The exclusive right of possession and use of all real property during the term of the lease, subject to the regulatory provisions contained herein.

In addressing Havasu's salvage rights, the lease provided:

[T]he Concessioner and all lienholders agree to hold harmless the United States and its agents against assertions of title or rights to possession of real property or improvements, and to indemnify the United States for any claims of any other parties based on assertion of title or rights to possession of any improvements or real property.

¶ 10 In addition, the BLM compensated Havasu, at least in part, for Havasu's costs of constructing improvements. The BLM allowed Havasu to deduct up to twenty percent of lease payments for these costs. Thus, the Government paid—at least in part—for the improvements. That fact further supports the Government's ownership.

¶ 11 Even Havasu's possessory interest was severely limited. The lease required Havasu to provide a development plan for the leased land and have it approved by the BLM. After the plan was approved, Havasu was required to carry out "all stipulations therein." The lease also granted Havasu the right to use the lands and improvements only "for the purposes set forth herein." It required Havasu to adopt and implement operations and maintenance plans for the improved property. The lease also subjected Havasu to inspections of all its activities for the purpose of determining its compliance. Considered together, the provisions of the lease obligated Havasu to provide public accommodations and service business activities as specified by the BLM. When the lease is read in its entirety, Havasu's rights in the

improvements cannot be characterized as "full authority to control" them.

¶ 12 Although the tax court cited two lease provisions as supporting its decision, these provisions actually reinforce the conclusion that Havasu does not own the improvements. The cited provisions significantly restrict Havasu's control and ability to dispose of the improvements.

¶ 13 First, although one of Havasu's rights is to sell its "possessory interest" under the lease "at any time to a qualified buyer," this right does not show that Havasu's interest in the improvements is freely alienable. Havasu has no right to sell the improvements themselves. It can sell only its "possessory interest," defined as the "exclusive right to conduct business within the concession boundaries under the terms of the concessions contract." This interest carries with it "the privileges of ownership, subject to the restrictions herein, except for title, which shall be held by the U.S. [sic] Government."

¶ 14 The lease also does not confer on Havasu the right to determine who a "qualified buyer" of its possessory interest might be. That right remains with the Government. The lease provides: "A qualified buyer is any party ruled fit by the [BLM] after application of criteria established in the Concessions Review Program." We find no reason to conclude that Havasu has full authority to destroy or dispose of the real property improvements.

¶ 15 The tax court also mistakenly relied on a second provision that Havasu "may remove the improvements at the termination of the lease, as long as [it] restore[s] the land." The lease granted Havasu far less freedom than this conclusion suggests. The lease permits the lessee to salvage real property improvements only if the BLM were to direct it to do so in lieu of the compensation that Article 13 provides, or if the BLM were to determine "that commercial operations on these lands will be discontinued." The right to salvage real property improvements for which the landowner has decided it has no further use can hardly be characterized as "full authority to ... destroy" or dispose of the improvements. Moreover, although it is true that the lease offered Havasu full or

**352**

partial compensation for improvements left behind after termination of the lease, it would do so only under limited circumstances. Such limited compensation is inconsistent with the view that Havasu owns the improvements.

¶ 16 We now turn to additional provisions upon which the County relies, but the trial court did not. As the County points out, the fifty-year term of the lease is renewable in perpetuity if the lessee performs the lease in good faith. We disagree, however, with the County's characterization of the lessee's interest as "close to a fee simple absolute estate." As we noted above, the restrictions and requirements of the lease are substantial and pervasive. An "estate" whose existence and renewability depends on monitored compliance with such requirements can hardly be characterized as "unlimited as to duration, disposition, and descendibility." Even if the contract were perpetually renewed, moreover, duration alone does not establish Havasu's ownership of improvements constructed pursuant to the contract.

¶ 17 The County also urges that the requirement that Havasu name BLM as an additional insured on any casualty insurance policy protecting the improvements is not evidence of a significant restriction on Havasu's rights in the improvements. The County argues that only a requirement that BLM be named as the sole insured, as in *Cutter Aviation,* would suffice. The County is mistaken. The court in *Novasic* relied on a provision similar to the one in this case as supporting the conclusion that the lessee did not own the improvements. 12 Ariz.App. at 554, 473 P.2d at 479.

¶ 18 The County also notes that the lease did not restrict Havasu's right to encumber its possessory interest for the purpose of purchasing rights under the lease or for building or improving the property or conducting concession business. However, the absence of these restrictions on the possessory interest does not confer ownership in the improvements themselves. Moreover, the lease prohibited Havasu from using loan proceeds from such encumbrances for purposes unrelated to the property or the concession business. No such restriction could be imposed on a true owner of real property improvements.

¶ 19 Viewed as a whole, the lease does not bear out the tax court's conclusion that Havasu owned the improvements it constructed on BLM land. On the contrary, both the general rule that a lessee does not own improvements and the terms of the lease lead inexorably to the conclusion that Havasu has only possessory interest in the improvements, which are owned by the Government. Accordingly, Havasu and not the County is entitled to judgment as a matter of law.

¶ 20 Havasu requests an award of attorney's fees in the tax court and on appeal pursuant to Arizona Revised Statutes Annotated section 12–348(B) (Supp.2000). We grant the request, subject to the limitations imposed by sections 12–348(D), –348(E)(3) and –348(5) (Supp.2000), and compliance with ARCAP 21. The judgment is reversed and this matter is remanded with directions to enter summary judgment for Havasu.

CONCURRING: SUSAN A. EHRLICH, Judge, CECIL B. PATTERSON, JR., Judge.