211 P.3d 1228

**CALPINE CONSTRUCTION FINANCE COMPANY, a Delaware limited liability partnership, Plaintiff/Appellant,**

v.

**ARIZONA DEPARTMENT OF REVENUE; Mohave County, Defendants/Appellees.**

**No. 1 CA–TX 07–0012.**

Court of Appeals of Arizona, Division 1, Department T.

April 16, 2009.

Mooney Wright & Moore PLLC by Paul J. Mooney, Jim L. Wright, Mesa, Attorneys for Plaintiff/Appellant.

Sanders & Parks PC by Jay C. Jacobson, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

IRVINE, Judge.

¶ 1 Calpine Construction Finance Co. ("Calpine") appeals from a grant of summary judgment holding that Calpine must pay the Arizona property tax on improvements and personal property located at the South Point Energy Center ("Plant"), which is located on the Fort Mojave Indian Reservation. We hold that Calpine owns the improvements and personal property based upon the language in the lease agreement, Calpine's lack of rental obligations for the improvements, and its control over the removal or replacement of the improvements. Therefore, we affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

### I. The Lease

¶ 2 Calpine and the Fort Mojave Indian Tribe ("Tribe") are parties to Lease No. 640–050–99 ("Lease") dated August 4, 1999. This document, approved by the Bureau of Indian Affairs, allows Calpine to lease trust land from the Tribe in order to construct and operate an electric power generating plant with related improvements. The Lease is for a 50–year term, with an option to extend.

¶ 3 The Lease document provides for the lease of raw land, not the improvements or personal property built by Calpine. The Lease specifically provides that "all buildings, improvements, fixtures, machinery and equipment of whatever nature at any time constructed, placed or maintained on any part of the Leased Land *shall be the property of Calpine* . . . ." (Emphasis added.) The Lease also states that "Calpine shall leave all Improvements in place on the Leased Land in good repair and in a safe condition" but may remove inventory and personal property located on the improvements or land at the expiration of 50 years or any earlier termination.

¶ 4 The Lease provides that if the Tribe were to take any property from Calpine in condemnation proceedings, any awards by the condemning authority would be distributed to Calpine, including the value of the land without improvements. If an entity other than the Tribe takes the land, the parties will allot the proceeds as follows: (1) to the Tribe for the value of the raw, unimproved land; (2) to Calpine for the improvements' value; (3) to the Tribe for the reversionary interest in the improvements; and (4) to Calpine for the value of the leasehold and the improvements.

¶ 5 The parties executed two modifications to the Lease. The first modification dealt with, among other things, a potential lawsuit in the event the Arizona Department of Revenue ("Department" or "ADOR") attempted to tax the power plant. The second modification, effective October 17, 2001, allowed Calpine to extend the Lease for another 15 years at the end of the 50–year term. It also authorized Calpine to remove or replace any improvements, without prior consent from the Tribe or the Secretary of the Interior ("Secretary"), in order to preserve the improvements' value should they become obsolete, defective, or worn out. This modification also noted that, on or about October 18, 2001, Calpine was in the process of completing a sale and leaseback of the improvements involving South Point Energy Center, LLC, and State Street Bank and Trust Co.

### II. The District Court Litigation

¶ 6 The parties' litigation began in the United States District Court for the District of Arizona. In that forum, the Tribe sued the Director of ADOR to prevent the Department from assessing a property tax on the Plant's land and improvements. *See Fort Mojave Indian Tribe v. Dir. of Ariz. Dep't of Revenue,* No. CIV 02–1212–PCT–MHM (D.Ariz. Mar. 31, 2004). Calpine successfully

moved to intervene and to join Mojave County ("County").

¶ 7 The County moved to dismiss Calpine based upon lack of subject matter jurisdiction under the Tax Injunction Act, 28 U.S.C. section 1341 (1948) (prohibiting district courts from enjoining an assessment, levy, or collection under state law when a plain, speedy, and efficient remedy is available in state court). The district court granted the motion. In turn, the Department brought a motion to dismiss the Tribe's complaint, based in part on the Tribe's lack of standing to challenge the relevant property tax statutes. The Department argued that Calpine, not the Tribe, owned the improvements, so no tax was imposed on the Tribe. The district court agreed, granted the motion to dismiss, and entered a final judgment against the Tribe and Calpine. Neither side appealed.

### III.  The State Court Litigation

¶ 8 While awaiting the district court's ruling, Calpine sued the Department and the County in the Arizona Tax Court pursuant to Arizona Revised Statutes ("A.R.S.") § 42–11005 (2006) to obtain a refund of illegally collected taxes. The Department filed a counterclaim on Calpine's failure to file annual reports with the Department for tax years 2003 and 2004 within the time set forth in A.R.S. § 42–14152(A) (2006) for paying applicable penalties. The Department sought penalties of $4900 for each of the tax years.

¶ 9 In its valuations, the Department attributed improvements and personal property at the Plant to Calpine, valuing them at $88,000,000 for the 2003 tax year and $122,876,000 for the 2004 tax year. The Department contends that its valuations do not include any property attributed to the Tribe, and cover only Calpine's property.

¶ 10 The parties filed cross-motions for summary judgment as to whether Calpine was liable for property taxes on the Plant improvements and on the counterclaim. In addition, the Department and the County moved to strike (1) Calpine's photograph of the Plant attached as an exhibit to its Combined Reply and Response, and (2) two memorandum decisions from this court attached to Calpine's motion for summary judgment.

¶ 11 The tax court denied Calpine's motion for summary judgment and granted all of the defendants' motions. The ensuing judgment, which includes stipulated language from the parties, specifies that the grant of summary judgment extends only to whether the improvements and personal property are subject to taxation, and not the amount of tax liability. Calpine appeals. We have jurisdiction pursuant to A.R.S. § 12–120.21 (2003).

### DISCUSSION

¶ 12 We review de novo the tax court's grant of summary judgment. *Wilderness World, Inc. v. Dep't of Revenue*, 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995). Our review of statutory interpretation issues is also de novo. *Univ. Med. Ctr. Corp. v. Ariz. Dep't of Revenue*, 201 Ariz. 447, 450, ¶ 14, 36 P.3d 1217, 1220 (App.2001).[1]

¶ 13 The Arizona Constitution states that all property in Arizona not exempt by law shall be taxed. Ariz. Const. art. 9, § 2(13); *see also* A.R.S. § 42–11002 (Supp.2008). The statutory exemptions, contained in A.R.S. §§ 42–11101 to –11133 (Supp.2008), do not refer to exemptions for power plant improvements and associated personal property. In 2000, however, the Legislature specifically provided that the Department must centrally value electrical generation facilities operating in Arizona. A.R.S. § 42–14151(A)(4) (2006); *see also* 2000 Ariz. Sess. Laws, ch. 384, §§ 1–3.

¶ 14 The Department determines the "valuation" of "all property, owned, or leased, and used by taxpayers in the following businesses: ... [o]peration of an electric generation facility." *Id.* The three components of electrical generation property—personal property, land, and real property improvements—are valued using different methodologies. A.R.S. § 42–14156(A)(1–3) (Supp.2008). The Department valued only Cal-

---

1. The parties dispute whether the district court's decision is binding and conclusive of the issues raised in the tax court and in this appeal. Because we resolve this case on the merits in favor of the defendants, we need not address the effect of that decision.

pine's personal property, but in accordance with the parties' stipulation, the state court ruling addressed both improvements and personal property. Personal property is "all tangible property except for land and real property improvements as defined in this section," A.R.S. § 42–14156(B)(2), and includes "foundations or supports for the machinery or apparatus for which they are provided, including water cooling towers." *Id.* Real property improvements are "buildings, including administration buildings, maintenance warehouses and guard shacks, water retention ponds, sewage treatment ponds, reservoirs, sidewalks, drives, curbs, parking lots, tunnels, duct banks, canals, fencing and landscaping." A.R.S. § 42–14156(B)(3).

¶ 15 The central issue of this case is whether Calpine or the Tribe owns the improvements. In general, a state cannot tax property located on a reservation that is owned by an Indian tribe or an individual Indian. *Battese v. Apache County,* 129 Ariz. 295, 296, 630 P.2d 1027, 1028 (1981); *Pimalco, Inc. v. Maricopa County,* 188 Ariz. 550, 555, 937 P.2d 1198, 1203 (App.1997). Property owned by a non-Indian, however, is taxable. *Navajo County v. Peabody Coal Co.,* 23 Ariz.App. 259, 260, 532 P.2d 201, 202 (1975) (supplementing 23 Ariz.App. 101, 530 P.2d 1134 (1975)).

¶ 16 Ownership for property tax purposes signifies the "collection of rights to use and enjoy property, including [the] right to transmit it to others." *Cutter Aviation, Inc. v. Ariz. Dep't of Revenue,* 191 Ariz. 485, 490, 958 P.2d 1, 6 (App.1997). The general rule is that "a permanent structure placed upon and attached to the realty by a tenant is real property belonging to the lessor." *Id.* at 492, 958 P.2d at 8 (citing *Maricopa County v. Novasic,* 12 Ariz.App. 551, 553, 473 P.2d 476, 478 (1970)). In *Novasic,* however, we stated that an exception exists: the parties can abrogate the general rule that the lessor owns improvements built by the lessee by expressly agreeing to treat the improvements as belonging to the lessee. 12 Ariz. App. at 553, 473 P.2d at 478; *see also* 25

C.F.R. § 162.608 (2008) ("Improvements placed on the leased land shall become the property of the lessor unless specifically excepted therefrom under the terms of the lease."). Therefore, we must examine the Lease terms and the surrounding circumstances to determine ownership.

¶ 17 Careful consideration of the lease terms leads us to conclude that Calpine owns the improvements. First, the Lease expressly provides that the improvements are Calpine's property.[2] Although this provision may not be conclusive by itself, we read one part of the Lease agreement "in light of all other parts of the lease." *Novasic,* 12 Ariz. App. at 553, 473 P.2d at 478; *Cote v. A.J. Bayless Markets, Inc.,* 128 Ariz. 438, 442, 626 P.2d 602, 606 (App.1981). As noted, the Lease allocates to Calpine the portion of any condemnation award representing the value of the improvements. Moreover, the Lease extends only to raw land, and provides that Calpine is to pay no rent for the initial 16 years of the Lease term. The lack of rental charges for the improvements supports the argument that Calpine owns them during the Lease term. *See Novasic,* 12 Ariz.App. at 554, 473 P.2d at 479; *Interwest Aviation v. County Bd. of Equalization,* 743 P.2d 1222, 1223, 1226–27 (Utah 1987) (citing the fact that taxpayer paid no rent on improvements as a significant issue in determining that the lessee, rather the government lessor, owned the improvements).

¶ 18 Second, a modification to the lease allows Calpine to remove or replace any improvements from the leased land without the consent of the Tribe or the Secretary. The lease originally read, "the removal or demolition of any of the Improvements shall not be made without the prior written approval of the Tribe and the Secretary...." The modification replaced this language, allowing Calpine to remove "and/or replace[ ]" improvements "in the ordinary course of business." Consequently, even though the Lease requires that improvements in existence at the end of the lease term must remain on the

2. In fact, the lease documents repeatedly refer to the improvements as "Calpine's power plant property."

property, Calpine controls what will be done with them in the interim. Given the extent of its control, we conclude that Calpine owns the improvements.

¶ 19 Calpine cites to a number of Lease terms indicating that the Tribe is the actual owner of the improvements. Calpine particularly relies on the Tribe's reversionary interest. The Department and the County argue this interest is not real, given that the useful life of the improvements is less than the term of the lease. They point to the testimony of Gary Harpster ("Harpster"), their expert witness, who testified that these provisions fail to transfer a significant benefit to the Tribe, and have no significant impact on its current value, based upon the realities of the situation and from the standpoints of power plant economics and accounting. Plant facilities have a finite physical life, low resale value, and cannot economically be removed from an existing plant and reinstalled at another plant.

¶ 20 According to Harpster, Calpine accrues almost all the benefits and risks of ownership of the improvements. Calpine benefits from an increase in the sales price received for power generated at the Plant or the negotiation of a favorable fuel contract, and Calpine incurs most losses attributable to poor operating performance. Calpine offered no admissible evidence to dispute this testimony.

¶ 21 Although this testimony is relevant to a consideration of who owns the improvements under the Lease, we do not find it conclusive. Harpster's conclusions are based on assumptions concerning future events that are by no means certain. We do not believe that current ownership is controlled by speculation as to whether the assets will still be of use at some future time. The issue is which party the Lease gave present rights of ownership. As discussed above, Calpine holds those rights under the Lease.

¶ 22 As noted above, although states may not tax Indian-owned property on tribal land, they may tax property owned by non-Indians. *Peabody Coal Co.*, 23 Ariz.App. at 260, 532 P.2d at 202. The Tribe and Calpine expressly agreed to treat the improvements as Calpine's property. The Lease gives all

control to Calpine regarding the removal or destruction of improvements on Tribal land. Calpine bears nearly all of the risks of ownership and it receives nearly all the benefits. Under these circumstances, Arizona may tax Calpine as the owner of the improvements.

¶ 23 Calpine also challenges the tax court's decision to strike its citation to two unpublished decisions and a photograph of the Plant. The cited decisions were issued in, *Ariz. v. Pima Grande Dev. II/Vestar*, 1 CA–TX 97–0013 (June 2, 1998) and *Allied-Signal, Inc. v. Ariz. Dep't of Revenue*, 1 CA–TX 96–0018 (Aug. 14, 1997). We review the tax court's rulings for abuse of discretion. *See State Bd. of Barber Exam'rs v. Walker*, 67 Ariz. 156, 162, 192 P.2d 723, 727 (1948).

¶ 24 The general rule for memorandum decisions is they "shall not be regarded as precedent nor cited in *any* court." Ariz.R.Civ.App.P. 28(c) (emphasis added); *accord* Ariz.R.Sup.Ct. 111(c); *Walden Books Co. v. Ariz. Dep't of Revenue*, 198 Ariz. 584, 589, ¶¶ 20–23, 12 P.3d 809, 814 (App.2000). A motion to strike is a proper vehicle for attacking citation to unpublished authority. *Southwest Airlines Co. v. Ariz. Dep't of Revenue*, 197 Ariz. 475, 478, ¶¶ 11–12, 4 P.3d 1018, 1021 (App.2000).

¶ 25 An exception to the prohibition exists when collateral estoppel applies. *See* Ariz.R.Civ.App.P. 28(c)(1). The elements of collateral estoppel are: (1) the parties actually litigated the issue in the prior proceeding; (2) the parties had a full and fair opportunity to litigate the issue; (3) the issue's resolution was essential to the decision; (4) the court entered a valid final decision on the merits; and (5) a common identity of parties exists. *Hullett v. Cousin*, 204 Ariz. 292, 297–98, ¶ 27, 63 P.3d 1029, 1034–35 (2003); *see generally Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (holding that state law of collateral estoppel determines the effect of a state court judgment).

¶ 26 Neither of the unpublished decisions passes the actual litigation prong. Neither decision considers the ownership of the property at issue here, and neither decision ana-

**250**

lyzes a lease containing the same terms as the Lease between Calpine and the Tribe. As we have explained, we must examine the specific facts to determine ownership. Because the issues in this case were not actually litigated in the other cases, the collateral estoppel doctrine does not apply.

¶ 27 Moreover, even though Calpine was not a party to *Pima Grande* or *AlliedSignal*, Calpine is attempting to use offensive collateral estoppel against the Department based on those cases. Such use is not permissible here. *See First Interstate Bank v. State Dep't of Revenue*, 185 Ariz. 433, 436, 916 P.2d 1149, 1152 (App.1995) ("It would be bad policy to require the government, in every instance, to appeal every adverse decision for fear of being foreclosed from relitigating the same issue against a different party in the future."), *disapproved on other grounds by Rogers Corp. v. State Dep't of Revenue*, 187 Ariz. 157, 158 n. 1, 927 P.2d 817, 818 n. 1 (App.1996); *cf. United States v. Mendoza*, 464 U.S. 154, 160, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) (discussing analogous public policy for federal court and explaining that a rule allowing non-mutual collateral estoppel against the government "would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue"). We recently reaffirmed this principle. *See Tostado v. City of Lake Havasu*, 220 Ariz. 195, 198 n. 5, 204 P.3d 1044, 1047 (App.2008) (even if Rule 28(c)(1) of the Arizona Rules of Civil Appellate Procedure permits citation of unpublished authority for collateral estoppel purposes, "it does not help Appellant here because offensive collateral estoppel generally is unavailable against the government."); *see generally Campbell v. SZL Props., Ltd.*, 204 Ariz. 221, 223 n. 1, ¶ 11, 62 P.3d 966, 968 n. 1 (App.2003) ("In contradistinction to the Arizona rule, the offensive use of collateral estoppel is not prohibited in federal court.").

¶ 28 Calpine also argues that the doctrine of virtual representation supports its citations to the memorandum decisions. Although Arizona recognizes virtual representation, a doctrine commonly encountered in class actions, we apply it only in limited circumstances. *El Paso Natural Gas Co. v. State*, 123 Ariz. 219, 222, 599 P.2d 175, 178 (1979); *but see Taylor v. Sturgell*, —— U.S. ——, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (disapproving theory of preclusion by "virtual representation"). *El Paso Natural Gas* held that a judgment in a taxpayer's suit against the state or other governmental subdivision was binding and conclusive on all other taxpayers and property owners similarly situated. *Id.* *El Paso Natural Gas* employed the *res judicata* doctrine, however, not collateral estoppel. Moreover, virtual representation does not apply here because interpreting the Lease in this case raises issues that are different from those in the unpublished decisions.

¶ 29 Next, we address the trial court's decision to exclude the photograph of the Plant. The County and Department successfully opposed the admission of the photographic evidence on the basis that it lacked authentication and identification under Rule 901(a) of the Arizona Rules of Evidence and it was not sworn or certified as required by Rule 56(e) of the Arizona Rules of Civil Procedure. Calpine failed to respond and the tax court granted the motion.

¶ 30 On appeal, Calpine attempts to justify admission of the document. We consider this argument waived by Calpine's failure to respond in the trial court. Moreover, we cannot say that the tax court clearly abused its discretion and that prejudice resulted. *See Selby v. Savard*, 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982). The tax court's decision states that the photograph is "unenlightening" and has "*de minimis*" persuasive value. Its exclusion was not prejudicial, and we accordingly affirm the ruling. *See id.*

¶ 31 Finally, the tax court granted the defense's motion for summary judgment, which included the Department's counterclaim. Although Calpine appealed the judgment, it does not address the counterclaim issues in its Opening Brief. Accordingly, we consider the argument waived and affirm the grant of summary judgment as to this issue. *See Nelson v. Rice*, 198 Ariz. 563, 567 n. 3, ¶ 11, 12 P.3d 238, 242 n. 3 (App.2000).

## CONCLUSION

¶ 32 We affirm the tax court's rulings in all respects. In addition, we deny Calpine's request for attorneys' fees incurred on appeal pursuant to A.R.S. § 12–348(B) (2003).

CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge and PHILIP HALL, Judge.