268 P.3d 387

**ARIZONA DEPARTMENT OF REVENUE, an agency of the State of Arizona, Plaintiff/Appellee,**

v.

**SOUTH POINT ENERGY CENTER, LLC, a limited liability company, Defendant/Appellant.**

**No. 1 CA–TX 10–0007.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 13, 2011.

---

Thomas C. Horne, Arizona Attorney General By Kenneth J. Love, Assistant Attorney General, Phoenix, Attorneys for Plaintiff/Appellee.

Mooney, Wright & Moore, PLLC By Paul J. Mooney and Jim L. Wright, Mesa, Attorneys for Defendant/Appellant.

## OPINION

BROWN, Judge.

¶ 1 South Point Energy Center, LLC, ("South Point"), operator of an electric generation facility in Mohave County, appeals the tax court's summary judgment ruling that the Arizona Department of Revenue ("the Department") was not required to correct property tax assessments based on estimates of the facility's original cost. For the following reasons, we hold that the tax court correctly decided the Department did not make an error within the meaning of the error-correction statutes, Arizona Revised Statutes ("A.R.S.") sections 42–16251[1] to – 16258 (2006 & Supp.2010), and therefore South Point was not entitled to relief on its claim that the Department overvalued the facility for tax years 2003 and 2004.

## BACKGROUND

¶ 2 The electric generation facility operated by South Point is owned by Calpine Corporation[2] and located on land leased from the Fort Mohave Indian Tribe ("the Tribe"). In January 2001, the Department advised South Point that the Department was responsible for "determining the full cash value of all property used for the generation of electricity, for property tax purposes." The Department also informed South Point that it intended to value the facility beginning in either tax year 2002 or tax year 2003, depending on when South Point placed the facility into commercial service, and that the land on which the facility was located would

---

1. "Error" is defined in pertinent part as follows: [A]ny mistake in assessing or collecting property taxes resulting from:
   (a) An imposition of an incorrect, erroneous or illegal tax rate that resulted in assessing or collecting excessive taxes.
   (b) An incorrect designation or description of the use or occupancy of property or its classification pursuant to chapter 12, article 1 of this title.
   (c) Applying the incorrect assessment ratio percentages prescribed by chapter 15, article 1 of this title.
   (d) Misreporting or failing to report property if a statutory duty exists to report the property.
   (e) [A] valuation that is based on an error that is exclusively factual in nature ... and that is objectively verifiable without the exercise of discretion, opinion, or judgment[.]
   A.R.S. § 42–16251(3).

2. According to the record before us, both South Point and Calpine Corporation are considered to be the "taxpayer." Thus, we refer to them collectively as South Point.

be exempt from taxation based on its ownership by the Tribe. Additionally, the Department requested that it be allowed to visit the facility to view the property and answer questions about reporting requirements.

¶ 3 In November 2001, South Point informed the Department of its legal position that based on the lease with the Tribe, the personal property at the facility "is *not* subject to Arizona's property tax." As to the Department's request to visit the facility, South Point stated that the request "would have to be approved by the Tribe" and that "the Tribe does not want the Department of Revenue purporting to exercise its jurisdiction on the Tribe's sovereign lands."

¶ 4 In January 2002, the Department requested that South Point complete a report for tax year 2003 pursuant to A.R.S. § 42–14152 (2006), which requires a company operating an electric generating facility to "file a report with the department, under oath, stating the information that the department requires to enable it to make a valuation of the company." The annual report was due on April 1, 2002. South Point did not return the report, and on April 15, 2002, the Department sent South Point a "Notice of Delinquent Filing." The notice provided that if South Point filed its report by May 20, 2002, it would preserve its ability to appeal the Department's valuation and classification of the property. In response, South Point confirmed that it would not be submitting the requested report and reiterated its opposition to the Department's efforts to tax the facility.

¶ 5 The Department then proceeded with its duties under A.R.S. § 42–14152(C), which requires the Department to "estimate" a property's value based on a percentage of the previous year's full cash value or "on any information that is available" to the Department if a taxpayer fails to report the information necessary for the Department to value the property. Because South Point did not provide any information regarding the original cost, and there was no previous year's full cash value on which to base the

valuation, the Department relied upon newspaper reports and data from another power producer to arrive at an estimated original cost of $275,000,000 for the facility's personal property in tax year 2003. Based on the valuation, the Department determined the full cash value for the facility was $88,000,000. The Department repeated the same procedures for tax year 2004, and South Point again declined to file the property tax report. The Department estimated the depreciated original cost of the personal property at the facility at $261,000,000 for tax year 2004 and determined the full cash value was $122,876,000.

¶ 6 In 2004, while litigation was pending regarding whether the facility was subject to taxation, South Point filed its report under A.R.S. § 42–14152 for tax year 2005.[3] South Point listed the actual costs of constructing the facility, which were less than the "estimates" the Department had used for 2003 and 2004.

¶ 7 In June 2005, South Point filed a notice of claim alleging the Department committed an error in setting the full cash values for tax years 2003 and 2004 "based on a determination of costs that are not accurate or complete." South Point recommended full cash values of $45,600,000 for 2003 and $56,200,000 for 2004. The Department denied the notice of claim on the grounds that South Point refused to file a property tax report and therefore the Department estimated the values using the best information available. The Department also indicated that South Point could not properly rely on the error-correction statutes as an avenue for relief. South Point then filed a petition with the State Board of Equalization ("the Board"), contending that the Department had relied on incorrect costs to determine the facility's value for both tax years.

¶ 8 After a hearing, the Board found that South Point "refused" to file annual reports with the Department for tax years 2003 and 2004. The Board also found, however, that South Point's "failure to file a report with the Department ... constitutes an 'error' under

---

**3.** South Point filed the report without waiving its claim that its electrical generation facility was not subject to taxation. South Point's claim was

ultimately rejected by this court in *Calpine Constr. Fin. Co. v. Ariz. Dep't of Revenue,* 221 Ariz. 244, 211 P.3d 1228 (App.2009).

A.R.S. § 42–16251." The Board then reduced the property's full cash value to $71,099,000 for tax year 2003 and $99,349,000 for tax year 2004.

¶ 9 The Department appealed the Board's decision to the tax court on December 14, 2005. Both the Department and South Point filed motions for summary judgment. The tax court ruled in favor of the Department, reasoning in part that the Department's valuation using the alternate valuation formula imposed by A.R.S. § 42–14152(C)(1) was not a "mistake" within the context of A.R.S. § 42–16251(3):

> There is no dispute that, had South Point filed a report, the Department would have used the cost data submitted by it and thus reached a different value pursuant to the § 14154 formula; lacking that report, and with no previous year's value to multiply [it] by 1.05, the Department used the information available to it to make its assessment. The use of that alternative information resulted from South Point's failure to report ... but any mistake in assessing its value did not, so (d) is inapplicable.

South Point timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) and –2101(B) (2003).

## DISCUSSION

¶ 10 South Point asserts that the Department's valuation of its facility constitutes an "error" in assessing property taxes that resulted from South Point's failure to report its property and is therefore correctable under A.R.S. § 42–16251(3)(d). Alternatively, South Point argues that the Department's estimates of the facility's original cost were errors "exclusively factual" and "objectively verifiable" within the meaning of A.R.S. § 42–16251(3)(e). Resolution of this case turns on the threshold question of what constitutes a "mistake" under A.R.S. § 42–16251(3). Thus, we need not decide the application of subsections (d) or (e), because even assuming South Point is correct that it is entitled to rely on (d) or (e) to pursue correction of an assessment error based on its failure to report property, there was no mistake here and thus no error occurred.

¶ 11 We review the grant of summary judgment de novo. *Wilderness World v. Ariz. Dep't of Revenue,* 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995). Statutory construction likewise raises questions of law subject to de novo review. *Nordstrom, Inc. v. Maricopa County,* 207 Ariz. 553, 556, 88 P.3d 1165, 1168 (App.2004).

¶ 12 In construing a statute, our goal is "to fulfill the intent of the legislature that wrote it." *State v. Williams,* 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993). To determine intent, we look first to the statutory language. *Calmat of Ariz. v. State ex rel. Miller,* 176 Ariz. 190, 193, 859 P.2d 1323, 1326 (1993). We construe related statutes in the context of the statutory scheme and strive to achieve consistency among them. *Bills v. Ariz. Prop. & Cas. Ins. Guar. Fund,* 194 Ariz. 488, 494, ¶ 18, 984 P.2d 574, 580 (App.1999). We also strive to avoid an absurd result, which is defined as one "so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion." *Perini Land & Dev. Co. v. Pima County,* 170 Ariz. 380, 383, 825 P.2d 1, 4 (1992) (internal quotations and citation omitted).

¶ 13 It is undisputed that South Point was required to file a report under § 42–14152(A) providing under oath the information relevant to valuation of its electrical generation facility. Based on that information, the Department establishes a formula for valuing electric generation facilities, a critical component of which is the original cost. *See* A.R.S. § 42–14156 (Supp.2010). Because South Point refused to file a property tax report for tax years 2003 and 2004, the Department had no original cost information other than what it could glean from public sources. As a result, the Department estimated the facility's original cost as required by A.R.S. § 42–14152(C)(1), which directs the Department to estimate the cost using "any information" available to it when the taxpayer fails to submit its report containing the original cost. South Point argues that because it failed to report information regarding its facility, requiring the Department to estimate the value, the Department committed an error that

allowed the Board to reduce the full cash values.

¶ 14 Under the property tax error-correction statutes, the Board is authorized to correct errors made by specified tax officials within a three-year period. "Error" is defined in part as:

[A]ny mistake in assessing or collecting property taxes resulting from: ... (d) [m]isreporting or failing to report property if a statutory duty exists to report the property [or] (e) ... a valuation that is based on an error that is exclusively factual in nature ... and that is objectively verifiable without the exercise of discretion, opinion, or judgment[.]

A.R.S. § 42–16251(3). Because the Department is the only entity that can assess or collect property taxes, the dispositive issue here is whether the Department made a mistake when it assessed or collected taxes from South Point.

¶ 15 The legislature did not define "mistake." Unless statutory words are technical or have acquired a particular meaning within the law, we construe them using their common meanings. A.R.S. § 1–213 (2002); *see also Jennings v. Woods*, 194 Ariz. 314, 323, ¶¶ 42–43, 982 P.2d 274, 283 (1999) (noting that in the absence of a statutory definition, a dictionary may be consulted to determine the ordinary meaning). The record does not reflect, and South Point does not assert, that "mistake" is a technical word or holds a particular meaning within the law. We therefore apply its common meaning, which is "[a]n error, misconception, or misunderstanding; an erroneous belief." Black's Law Dictionary 1022 (8th ed.2004).

¶ 16 Even construing these statutes liberally in favor of the taxpayer, as urged by South Point, we cannot conclude that the Department's assessment of the facility falls within the common meaning of mistake. The Department's assessment was not an error, misconception, misunderstanding, or an erroneous belief. The Department did exactly what it was statutorily required to do; it applied the alternate valuation formula set forth in A.R.S. § 42–14152(C)(1) because South Point did not file the annual reports.

South Point does not allege that the Department made any calculation errors in applying the alternate valuation formula, nor does it allege that the Department failed to follow its statutory obligation to estimate the value based on "any information" available. The Department's alternate valuation was based on an estimated original cost, not the actual original cost, and therefore the full cash value amounts it determined for 2003 and 2004 were higher than they would have been if all relevant information had been provided to the Department. There is no dispute that South Point would have obtained a more favorable result had it submitted the cost information when it was required to do so, but that does not mean the Department made a mistake when it followed its statutory obligation to proceed with estimating the value of the property. Thus, as the tax court properly determined, South Point did not prove the Department made an error under A.R.S. § 42–16251.

¶ 17 Our conclusion is consistent with the legislature's intention that a company that decides not to file the annual report gives up its right to challenge the valuation of its property. To ensure that an electric generation facility provides the information the Department needs to accurately value its property, including the original cost, A.R.S. § 42–14152 imposes penalties and provides an alternate valuation formula. If a facility fails to file the required report by April 1, or another approved deadline, the statute directs the Department to estimate the property's value "based on one hundred five per cent of the preceding year's full cash value" or "on any information that is available" to the Department. A.R.S. § 42–14152(C)(1). The Department must also assess a penalty equal to the lesser of: (1) one-half of one percent of the Department's estimated value for the property, or (2) one hundred dollars per day for each day beyond the due date that the company fails to file the report. A.R.S. § 42–14152(C)(2)(a)–(b). Additionally, if the facility does not file the report by May 20 of the valuation year, it *"forfeits its right to appeal* the valuation and classifica-

tion pursuant to § 42–14005." [4]   A.R.S. § 42–14152(D) (emphasis added).

¶ 18 If we were to accept South Point's argument that the Department committed a mistake by estimating personal property values based on "any information" available at that time rather than applying actual construction costs, the forfeiture penalty imposed under A.R.S. § 42–14152(D) would be rendered meaningless. *See Walker v. City of Scottsdale,* 163 Ariz. 206, 210, 786 P.2d 1057, 1061 (App.1989) (noting that when construing statutes "each word, phrase, clause, and sentence must be given meaning so that no part ... will be void, inert, redundant, or trivial"); *Maricopa County Juv. Action No. JD–6236,* 178 Ariz. 449, 452 n. 2, 874 P.2d 1006, 1009 n. 2 (App.1994) ("Statutes relating to the same subject ... should be construed harmoniously as though they constituted one law.") (internal quotations and citation omitted).

¶ 19 For example, under South Point's reading of A.R.S. § 42–16251, an electric generation facility could refuse to file the required annual reports, wait to see if the Department's valuation using the alternate valuation formula was advantageous to it, and then resort to the error-correction statutes to avoid the forfeiture penalty up to four years later if the alternate valuation proved disadvantageous. In addition, permitting a taxpayer who fails to file a tax return to appeal the Department's valuation up to four years later using the error-correction statutes, while a taxpayer who timely filed its return has only two years to appeal under A.R.S. § 42–14005, in effect penalizes taxpayers who comply with the requirement of submitting an annual report. We conclude that the legislature could not have intended the anomalous result of permitting an electric generation facility to circumvent the forfeiture penalty imposed by A.R.S. § 42–14152(D) by challenging the substantive basis of the full cash value determination through the error-correction statutes. *See Perini,* 170 Ariz. at 383, 825 P.2d at 4.

¶ 20 In sum, our decision is consistent with the legislature's stated purpose in enacting the error-correction statutes: "to provide a

simple and expedient procedure for correcting of errors occurring in assessing or collecting property taxes, whether they inure to the benefit of the taxpayer or the government." 1994 Ariz. Sess. Laws, ch. 323, § 53 (2nd Reg.Sess.). In this case, the Department did not make an error in assessing South Point's property taxes and thus South Point was not entitled to modification of the tax assessments.

## CONCLUSION

¶ 21 For the foregoing reasons, we affirm the tax court's order granting summary judgment in favor of the Department. Accordingly, we deny South Point's request for attorney's fees incurred on appeal and in the tax court.

CONCURRING: PATRICIA K. NORRIS and PHILIP HALL, Judges.

---

**4.** Under A.R.S. § 42–14005 (2006), property owners who are not satisfied with the Depart-

ment's valuation of their property may appeal to either the Board or the superior court.