**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, a federally recognized Indian tribe on its own behalf and as parens patriae for its members; CTGW, LLC, a limited liability company organized under Delaware law,

*Plaintiffs-Appellants*,

v.

THURSTON COUNTY BOARD OF EQUALIZATION, a political subdivision of the State of Washington; JOHN MORRISON, Thurston County Board of Equalization member, in his official capacity; BRUCE REEVES, Thurston County Board of Equalization member, in his official capacity; THURSTON COUNTY, a political subdivision of the State of Washington; STEVEN DREW, Thurston County Assessor, in his official capacity; SHAWN MYERS, Thurston County Treasurer; ELIZABETH LYMAN, Thurston County Board of Equalization member,

*Defendants-Appellees*.

No. 10-35642

D.C. No.
3:08-cv-05562-
BHS

OPINION

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted
June 5, 2013—Seattle, Washington

Filed July 30, 2013

Before:  Arthur L. Alarcón, M. Margaret McKeown,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

**SUMMARY**[*]

**Indian Tribes / Taxation**

Reversing the district court's summary judgment, the panel held that state and local governments lack the power to tax permanent improvements built on non-reservation land owned by the United States and held in trust for an Indian tribe pursuant to 25 U.S.C. § 465.

The panel held that pursuant to *Mescalero Apache Tribe v. Jones*, 411 U.S. 145 (1973), the exemption of trust lands from state and local taxation under § 465 extends to permanent improvements on such lands.  The panel concluded that the fact that the improvements were owned by

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

a limited liability company, rather than by the tribe itself, was irrelevant, as was the question whether the improvements constituted personal property under state law.

## COUNSEL

Gabriel S. Galanda and Anthony S. Broadman, Galanda Broadman, PLLC, Seattle, Washington; Kevin M. Fong (argued) and Blaine I. Green, Pillsbury Winthrop Shaw Pittman, LLP, San Francisco, California, for Plaintiffs-Appellants.

Jon Tunheim, Prosecuting Attorney, Jane Futterman and Scott C. Cushing (argued), Deputy Prosecuting Attorneys, Olympia Washington, for Defendants-Appellees.

Rob Roy Smith, Ater Wynne LLP, Seattle, Washington, for Amicus Curiae Marine View Ventures, Inc., Island Enterprises, Inc., and Port Madison Enterprises.

## OPINION

IKUTA, Circuit Judge:

At issue in this case is whether state and local governments have the power to tax permanent improvements built on non-reservation land owned by the United States and held in trust for an Indian tribe. Pursuant to 25 U.S.C. § 465, and *Mescalero Apache Tribe v. Jones*, 411 U.S. 145 (1973), we hold that they do not.

# I

The Confederated Tribes of the Chehalis Reservation is a federally recognized Indian tribe in Southwest Washington.[1] In 2002, the Tribe purchased approximately forty-three acres of land known as the "Grand Mound Property," which was located off the Tribe's reservation in Thurston County, Washington.  Two years later, the Tribe asked the Department of the Interior to buy the Grand Mound Property and hold it in trust for the use and benefit of the Tribe pursuant to the Department's authority under 25 U.S.C. § 465.[2]  Section 465 authorizes the Secretary of the Interior to acquire "any interest in lands, water rights, or surface rights to lands, within or without existing reservations," and to hold title to such lands and rights "in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired."  The statute also provides that "such lands or rights shall be exempt from State and local taxation."  *Id.*[3]

---

[1] The documents filed with this court inconsistently refer to the Confederated Tribes of the Chehalis Reservation as both the "Tribe" and the "Tribes."  We will use the singular form, as does the Tribe in its brief.

[2] The parties indicated in passing that the Grand Mound Property was converted to reservation land at some time after the facts at issue in this appeal.  Because the parties did not address the effect of this change, we do not reach it here.

[3] 25 U.S.C. § 465 states, in pertinent part:

> The Secretary of the Interior is authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust

In 2005, while the Tribe's request was still pending before the Department, the Tribe and Great Wolf Resorts, Inc. entered into an agreement to form CTGW, LLC, a Delaware limited liability company, for the purpose of building a resort, conference center, and water park (collectively, the Great Wolf Lodge) on the Grand Mound Property. Under the agreement, the Tribe owned an undivided 51 percent interest in CTGW. In 2006, the Department agreed to purchase the Grand Mound Property pursuant to § 465 and to hold the land in trust for the Tribe.

The Tribe and CTGW subsequently entered into a lease agreement that gave CTGW the right to use the Grand Mound Property "for a hotel, indoor water park and convention center and related economic development or for any other lawful purpose" for twenty-five years. Article 11 of that lease provides:

> All buildings and improvements on the Premises shall be owned in fee by [CTGW] during the term of this Lease provided that such buildings and improvements (excluding

---

or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.

. . . .

Title to any lands or rights acquired pursuant to this Act or the Act of July 28, 1955 (69 Stat. 392), as amended (25 U.S.C. 608 et seq.) shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation.

> removable personal property and trade fixtures) shall remain on the Premises after the termination of this Lease and shall thereupon become the property of the [Tribe].

In short, under Article 11, CTGW would own the Great Wolf Lodge's physical structures for twenty-five years, at which time the Tribe would become the owner. The Bureau of Indian Affairs approved the lease on July 9, 2007, and it remained in effect at all times relevant to this suit. The Lodge opened the following year.

In 2007, Thurston County began assessing property taxes on the Great Wolf Lodge. The County recognized that § 465 exempted the Grand Mound Property from state and local taxation. It concluded, however, that the structures on the land were not tax exempt, because under the terms of the lease they were owned by CTGW and not the Tribe.

The Tribe and CTGW believed that federal law barred the County from imposing these property taxes, and brought suit against the County and related defendants on September 18, 2008, seeking declaratory and injunctive relief.[4] The district court awarded summary judgment to the County, holding that state and local governments are not necessarily prohibited from taxing permanent improvements, like the Great Wolf Lodge, that are owned by non-Indians. The Tribe and CTGW

---

[4] For convenience, we refer to the defendants collectively as "the County."

timely appealed,**⁵** and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

On appeal, we review the summary judgment order de novo, asking "whether, viewing the evidence in the light most favorable to" the Tribe and CTGW, "there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013) (quoting *Delia v. City of Rialto*, 621 F.3d 1069, 1074 (9th Cir. 2010)). "[S]ummary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(c)).

## A

This appeal raises the purely legal question whether the exemption of trust lands from state and local taxation under § 465 extends to permanent improvements on such lands.

The law relevant to this appeal traces back to *United States v. Rickert*, 188 U.S. 432 (1903), a case that precedes the enactment of § 465 by over thirty years. In *Rickert*, the

---

**⁵** The County's argument that the appeal was not timely is meritless. The final judgment in this case issued on April 2, 2010. The Tribe and CTGW filed a Rule 59(e) motion seeking reconsideration, which was denied June 23, 2010. They appealed within thirty days of that denial, making the appeal timely under Federal Rule of Appellate Procedure 4(a)(4)(A)(iv).

federal government challenged the taxes imposed by Roberts County, South Dakota on "certain permanent improvements" on lands within the former Sisseton Indian Reservation. *Id*. at 432–33. The United States had allotted the lands to individual members of the Sisseton band of Sioux Indians, but held the lands in trust for a period of twenty-five years or longer. *Id*. at 435–36 (discussing Act of Feb. 8, 1887, ch. 119, § 5, 24 Stat. 388, 389 (1887) (codified as amended at 25 U.S.C. § 348 (2006))). *Rickert* first held that state and local governments had no power to tax the land itself because it was owned by the federal government. *Id.* at 437–39 ("If, as is undoubtedly the case, these lands were held by the United States . . . it would follow that there was no power in the state of South Dakota, for state or municipal purposes, to assess and tax the lands in question until at least the fee was conveyed to the Indians."). In reaching this conclusion, the Court relied on the proposition that "property of the United States was exempt by the Constitution of the United States from taxation under the authority of any state." *Id.* at 438 (citing *Van Brocklin v. Tennessee*, 117 U.S. 151, 155 (1886)). The Court then turned to the related question whether "the permanent improvements, such as houses and other structures upon the lands held by allotment," were subject to state and local taxes as personal property. *Id.* at 441–42. The Court held that the state and local governments had no power to tax these improvements, concluding that "[e]very reason that can be urged to show that the land was not subject to local taxation applies to the assessment and taxation of the permanent improvements." *Id.* at 442.

Decades after *Rickert*, the Court again addressed the question whether state and local governments had the power to tax permanent improvements on non-reservation land owned by the United States and held in trust for Indians. *See*

*Mescalero Apache Tribe v. Jones*, 411 U.S. 145 (1973). In that case, the Mescalero Apache Tribe operated a ski resort on land located adjacent to reservation lands, but outside "the existing boundaries of the reservation." *Id.* at 146. Although the record did not establish the precise form of the business entity that was operating the ski resort, the Court quickly dispensed with this issue, reasoning that "the question of tax immunity cannot be made to turn on the particular form in which the Tribe chooses to conduct its business" *Id.* at 157 n.13. The Mescalero Apache Tribe challenged two taxes imposed on the ski resort by New Mexico: a tax on the ski resort's gross receipts, and a use tax "based on the purchase price of materials used to construct two ski lifts at the resort." *Id.* at 147. The Tribe argued that federal law barred the state from assessing either tax, because the Tribe's interest in the lands was "within the immunity afforded by § 465." *Id.* at 155 n.11; *see also id.* at 146.

The Court rejected the Tribe's argument with respect to the gross receipts tax, holding that § 465 exempted "lands and rights in land" from taxation, and "not income derived from [the land's] use." *Id.* at 155. But the Court struck down the use tax, reasoning that this form of tax was equivalent to a tax on land, and therefore barred by § 465. In reaching this conclusion, the Court first noted that the construction material at issue had already been "installed in the construction of the ski lifts," and was therefore "permanently attached to the realty." *Id.* at 158. Relying on *Rickert* and § 465, the Court reasoned that "these permanent improvements on the Tribe's tax-exempt land would certainly be immune from the State's ad valorem property tax." *Id.* The Court then held that the tax exemption in § 465 barred the tax New Mexico characterized as a "use tax." As the Court explained, "'use' is among the 'bundle of privileges that make up property or

ownership' of property," and therefore "a tax upon 'use' is a tax upon the property itself." *Id*. at 158 (quoting *Henneford v. Silas Mason Co.*, 300 U.S. 577, 582 (1937)). It followed that the "use of permanent improvements upon land is so intimately connected with use of the land itself that an explicit provision relieving the latter of state tax burdens must be construed to encompass an exemption for the former." *Id*. at 158 (citing *Rickert*, 188 U.S. at 441–43). On this basis, the Court struck down the tax.

Accordingly, *Mescalero* makes it clear that where the United States owns land covered by § 465, and holds it in trust for the use of a tribe (regardless of "the particular form in which the [t]ribe chooses to conduct its business"), § 465 exempts permanent improvements on that land from state and local taxation.[6]

---

[6] In connection with our analysis of *Mescalero*, the Tribe asks us to consider the following regulation recently promulgated by the Bureau of Indian Affairs to further interpret § 465:

> Subject only to applicable Federal law, permanent improvements on the leased land, without regard to ownership of those improvements, are not subject to any fee, tax, assessment, levy, or other charge imposed by any State or political subdivision of a State. Improvements may be subject to taxation by the Indian tribe with jurisdiction.

25 C.F.R. § 162.017(a). Because this regulation "merely clarifies and confirms" what § 465 "already conveys," we need not reach the applicability of this regulation or the level of deference owed to the Bureau of Indian Affairs in this context. *See Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 20–21 (2007).

**B**

*Mescalero*'s ruling is dispositive in this case. The Grand Mound Property at issue here is owned by the United States and held in trust pursuant to § 465. Under *Mescalero*, § 465's exemption from state and local taxation applies to the permanent improvements on that land. Thus, neither Thurston County nor any other state or local entity can tax the Great Wolf Lodge or other permanent improvements on that land. Thurston County's property taxes on the Grand Mound Property are therefore invalid under § 465 and *Mescalero*.

The County raises several arguments to counter this conclusion. First, the County attempts to distinguish *Mescalero* on the ground that the improvements at issue in this case are owned by CTGW, not the Tribe itself. *Mescalero* instructs us, however, that this distinction is irrelevant. In that case, as noted above, the form of the business through which the Mescalero Apache Tribe owned and operated the ski resort was unclear. *Mescalero* acknowledged this, but concluded it was unimportant because "the question of tax immunity cannot be made to turn on the particular form in which the Tribe chooses to conduct its business." *Mescalero*, 411 U.S. at 157 n.13. In light of this ruling, the question of immunity from the County's property tax assessments on the Great Wolf Lodge "cannot be made to turn on" the Tribe's decision to give ownership of the Lodge to its limited liability company for the duration of the lease. *See id.*

Second, the County argues that because the Great Wolf Lodge constitutes "personal property" under Washington law, it cannot constitute "lands or rights" as that phrase is used in § 465. *See* R.C.W. 84.04.080 (defining "personal property"

to include "all improvements upon lands the fee of which is still vested in the United States"). This argument also fails. *Mescalero* interpreted the scope of § 465 without reference to state law. As such, it ruled that permanent improvements on land owned by the United States and held in trust for Indians may not be taxed as a matter of federal law. *See Mescalero*, 411 U.S. at 155, 158 (holding, without consideration of New Mexico state law, that permanent improvements are within "the scope of the immunity specifically afforded by" § 465). Therefore, it is irrelevant whether permanent improvements constitute personal property under Washington law. *See* U.S. Const., art. VI, cl. 2; *cf. Drye v. United States*, 528 U.S. 49, 52–53 (1999) (holding that federal law defines "property and rights to property" for purposes of a federal tax statute, irrespective of whether the right is defined as a "property" right under state law).

Accordingly, we are bound by *Mescalero*'s interpretation of § 465 to conclude that Thurston County was barred from taxing the Great Wolf Lodge during the time in which the Grand Mound Property was owned by the United States and held in trust pursuant to § 465. The district court therefore erred in granting summary judgment for the County.

## C

The Tribe and CTGW argue in the alternative that the tax here at issue is preempted under *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980). In *Bracker*, relying on Congress's broad authority to regulate Indians and the "semi-independent position of Indian tribes," *id.* at 142 (internal quotation marks omitted), the Court held that the validity of state laws taxing transactions between Indians and non-Indians, on reservation land, is to be assessed based on "a

particularized inquiry into the nature of the state, federal, and tribal interests at stake." *Id*. at 145; *see also Wagnon v. Prairie Band of Potawatomi Nation*, 546 U.S. 95, 110–11 (2005) (specifying that *Bracker* applies "only where the legal incidence of the tax [falls] on a nontribal entity engaged in a transaction with tribes or tribal members . . . on the reservation." (internal quotation marks omitted)). *Bracker* thus creates a balancing test, *Wagnon*, 546 at U.S. 110, "designed to determine whether, in the specific context, the exercise of state authority would violate federal law," *Bracker*, 448 U.S. at 145.

We have applied the *Bracker* balancing test in a variety of circumstances involving the imposition of state or local taxes on non-Indians. *See, e.g.*, *Yavapai-Prescott Indian Tribe v. Scott*, 117 F.3d 1107, 1112 (9th Cir. 1997) (balancing state, federal, and tribal interests, and ruling against preemption of state taxes on food and room sales); *Salt River Pima-Maricopa Indian Cmty. v. Arizona*, 50 F.3d 734, 738 (9th Cir. 1995) (under a *Bracker* analysis, taxes on sales to non-Indians on Indian land were not preempted). Even prior to *Bracker*, we applied a similar mode of analysis in holding that possessory interest taxes on "non-Indian lessees of property held in trust by the United States Government for reservation Indians" are not per se preempted. *See Fort Mojave Tribe v. Cnty. of San Bernadino*, 543 F.2d 1253, 1255 (9th Cir. 1976); *see also Agua Caliente Band of Mission Indians v. Cnty. of Riverside*, 442 F.2d 1184, 1186-87 (9th Cir. 1971). None of these cases involved property taxes, however, so they do not implicate § 465.[7]

---

[7] While the distinction between taxes imposed on non-Indian lessees' rights of possession (as in *Agua Caliente* and *Fort Mojave*) and property taxes imposed on improvements owned by non-Indians (as in *Mescalero*)

Unlike the cases requiring us to undertake a *Bracker* analysis, the case before us involves only property taxes on permanent improvements on non-reservation land owned by the United States and held in trust for Indians.**[8]**   In this context, we are bound by *Mescalero*'s holding that such taxes are preempted under § 465, and need not consider *Bracker* or any other theory of preemption.

## III

*Mescalero* sets forth the simple rule that § 465 preempts state and local taxes on permanent improvements built on non-reservation land owned by the United States and held in trust for an Indian tribe.  This is true without regard to the ownership of the improvements.  Because the Supreme Court has not revisited this holding, we are required to apply it.  We

---

may appear formalistic, it is critical here.  Where a state or local government assesses a tax on land or improvements covered by § 465, we are bound by § 465 and *Mescalero* to invalidate such taxes. *Cf. Rodriguez de Quijas v. Shearson/American Exp., Inc*., 490 U.S. 477, 484 (1989) ("If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls.").  This is not so, however, when state or local governments impose taxes on interests other than the "lands or rights" covered by § 465.  In *Agua Caliente*, for example, we stressed that "[t]he California tax on possessory interests does not purport to tax the land as such," which would be barred by § 465, "but rather taxes the 'full cash value' of the lessee's interest in it," which is not covered by § 465.  442 F.2d at 1186.

**[8]** Although neither the record nor the parties' briefs reference the tax statute or ordinance under which the County levied its taxes, the parties agree that the tax at issue in this case is a property tax on the Great Wolf Lodge, and not a possessory interest or other type of tax.  The tax bills and other evidence in the record support this conclusion.

therefore reverse the district court's summary judgment order and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**