IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HARIANTO HARIANTO, et al., *Plaintiffs/Appellants*,

*v.*

STATE OF ARIZONA, et al., *Defendants/Appellees*.

No. 1 CA-CV 18-0446
FILED 9-24-2020

Appeal from the Superior Court in Maricopa County
No. CV 2015-051925
The Honorable John R. Hannah, Jr., Judge

**AFFIRMED**

COUNSEL

Zachar Law Firm, Phoenix
By Christopher J. Zachar
*Co-Counsel for Plaintiffs/Appellants*

The Leader Law Firm, Tucson
By John P. Leader
*Co-Counsel for Plaintiffs/Appellants*

Arizona Attorney General's Office, Phoenix
By G. Michael Tryon
*Co-Counsel for Defendants/Appellees*

Fennemore Craig PC, Phoenix
By Douglas C. Northup, Philip L. Brailsford
*Co-Counsel for Defendants/Appellees*

---

## OPINION

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Lawrence F. Winthrop joined.

---

**B R O W N,** Judge:

**¶1**        Appellant Harianto Harianto and several of his family members (collectively, "Harianto") were involved in a head-on collision with a wrong-way driver on I-17 in Yavapai County. Harianto sued the State of Arizona ("the State"), alleging the Arizona Department of Transportation ("ADOT") and the Department of Public Safety ("DPS") were negligent. The superior court granted summary judgment in favor of the State on all claims. The issue presented here is whether DPS dispatchers could properly claim statutory qualified immunity. We address other issues raised by Harianto in a separate memorandum decision. For the following reasons, we affirm.

### BACKGROUND

**¶2**        The relevant facts are undisputed. Alan Horan ("Horan") was spotted before dawn one morning driving north in the southbound lanes of I-17 in northern Maricopa County. Southbound motorists began calling 911 at 4:05 a.m. Callers described Horan as driving lock-armed and staring straight ahead as if in a trance, unaware of the hazard he was creating.

**¶3**        Because Horan was in Maricopa County when the first calls were received, they were routed to the Metro West district, which extends north to the southern boundary of Yavapai County. While receiving the calls, Dispatcher Zeiher, a DPS employee working in that district, alerted law enforcement officers to respond to the "wrong-way" driver emergency, which was automatically classified as the "highest priority-type call."[1]

---

[1]    While Harianto at times mentions "dispatchers," his briefing focuses almost exclusively on the alleged negligence of Zeiher, who was primarily

During the emergency, officers responded to the alerts at various times and locations. DPS Sergeant Sharp was near Anthem when the call was dispatched about a wrong-way driver. Sharp immediately attempted to intercept Horan, first at Anthem Way and then Table Mesa Road, but was unsuccessful. He continued driving north to further respond to the emergency.

¶4        As Horan approached the boundary between Maricopa and Yavapai counties, Zeiher contacted the Flagstaff district, which in turn notified DPS troopers in Yavapai County about Horan. Trooper Schmidt, who was driving south on I-17 several miles north of Horan's last known location, received the call about Horan from Flagstaff dispatch at 4:22 a.m. Schmidt initiated a traffic break to slow and eventually stop the southbound traffic with the goal of preventing southbound motorists from colliding with Horan's vehicle. Once the traffic was stopped, Schmidt intended to use his patrol car as a barrier between Horan and the southbound motorists.

¶5        At around 4:27 a.m., however, a few miles south of where Schmidt had started the traffic break, Horan's car collided with Harianto's minivan, killing three passengers in the minivan and seriously injuring another two passengers and the drivers of both vehicles. Horan had traveled at least 21 miles on I-17 in the wrong direction before the collision. Police could not determine exactly how, when, or why Horan began driving the wrong direction, but investigators speculated he may have been experiencing medical issues.

¶6        Harianto sued the State, alleging that through its agencies, the State was negligent in (1) failing to take appropriate measures, including providing reasonable warnings to prevent wrong-way driving and related accidents, and (2) failing to adopt or implement any law enforcement standards to prevent such accidents. Following substantial discovery, the State moved for summary judgment, asserting statutory qualified immunity precluded liability for the alleged negligence of DPS in handling the emergency. The superior court granted the State's motion, finding the State had statutory qualified immunity for the alleged negligent decisions DPS personnel made "concerning interdiction of [Horan] on the day of the collision." Harianto moved for reconsideration, asserting (1) no qualified

_____

responsible for alerting law enforcement officers about the wrong-way driver. Thus, although the record suggests several other dispatchers assisted in handling the emergency, we do not specifically address them in our analysis because Harianto has not alleged how they were negligent.

immunity exists for 911 dispatcher negligence claims, and (2) summary judgment was improper, because if the dispatchers had contacted field officers sooner, they would have likely prevented the collision. The court denied the motion and this timely appeal followed.

## DISCUSSION

**¶7**      We review the superior court's grant of summary judgment de novo, viewing the evidence and reasonable inferences in the light most favorable to the non-moving party. *Ochser v. Funk*, 228 Ariz. 365, 369, ¶ 11 (2011). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). Questions of statutory interpretation, including the applicability of qualified immunity, also are subject to de novo review. *Smyser v. City of Peoria*, 215 Ariz. 428, 432, ¶ 8 (App. 2007). Judicial construction of governmental immunity statutes "should be restrained and narrow." *Fid. Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, 225, ¶ 7 (1998). Governmental liability is presumed unless immunity clearly applies. *See Doe ex rel. Doe v. State*, 200 Ariz. 174, 176, ¶ 4 (2001).

**¶8**      Citing A.R.S. § 12-820.02, the superior court found that qualified immunity precluded Harianto's claim relating to dispatcher negligence. That statute provides:

> A. Unless a public employee acting within the scope of the public employee's employment intended to cause injury or was grossly negligent, neither a public entity nor a public employee is liable for:

> 1. The failure to make an arrest or the failure to retain an arrested person in custody.

A.R.S. § 12-820.02. We have previously interpreted subsection (A)(1) to include the "failure to make an investigatory stop which may or may not lead to an arrest." *Walls v. Ariz. Dep't of Pub. Safety*, 170 Ariz. 591, 595 (App. 1991).

**¶9**      Harianto does not contend that Dispatcher Zeiher intended to cause injury or was grossly negligent. Rather, he argues qualified immunity under § 12-820.02(A)(1) does not apply to a dispatcher under any circumstances, and because Zeiher delayed in contacting the Flagstaff district, she was negligent, making the State liable. Harianto's argument is based on *Hutcherson v. City of Phoenix* (*Hutcherson I*), 188 Ariz. 183 (App. 1996), *vacated,* 192 Ariz. 51 (1998). In that case, this court held that

4

§ 12-820.02 "does not grant qualified immunity to 911 operators." *Id.* at 190. On review, our supreme court vacated *Hutcherson I*, but Harianto argues the supreme court's opinion was meant to vacate only "unrelated portions of this Court's *Hutcherson* [*I*] opinion." *See Hutcherson v. City of Phoenix* (*Hutcherson II*), 192 Ariz. 51 (1998).

¶10 We recognize that in *Hutcherson II*, the supreme court accepted review of only one issue, which did not involve the 911 dispatcher's alleged negligence. *See id.* at 53, ¶ 12. But the supreme court's opinion plainly states, "we vacate the opinion of the court of appeals." *Id.* at 57, ¶ 37. And a later decision from this court rejected the notion that *Hutcherson I* was controlling or even relevant in assessing 911 dispatcher immunity, explaining that because the supreme court vacated the opinion, it has no precedential value. *Wertheim v. Pima Cnty.*, 211 Ariz. 422, 426, ¶ 17 n.2 (App. 2005) (citing *Wetherill v. Basham*, 197 Ariz. 198 (App. 2000)).

¶11 We must acknowledge, however, that courts have not been consistent in how they interpret and apply vacated opinions. For example, other than *Wertheim*'s explicit rejection of the notion that *Hutcherson I* has any continuing validity, other courts have given that case varied treatment. *See, e.g.*, *Spooner v. City of Phoenix*, 246 Ariz. 119, 124, ¶ 9 n.4 (App. 2018) (noting that *Hutcherson I* was "*reversed on other grounds*"); *Smyser v. City of Peoria*, 215 Ariz. 428, 436, ¶ 24 (App. 2007) (citing *Hutcherson I* without reference to any subsequent history); *Ogden v. J.M. Steel Erecting, Inc.*, 201 Ariz. 32, 37, ¶ 23 (App. 2001) (recognizing *Hutcherson I* was vacated but relying on its analysis of fault allocation); *Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972, 1017 (D. Ariz. 2012) (citing *Hutcherson I* as "vacated on other grounds," and noting that 911 dispatchers can be held liable for mere negligence).

¶12 But even if we were inclined to dive into the thorny question of whether vacated opinions may be appropriately cited for some type of persuasive value, whether by the parties or a court, we are bound by our supreme court's instruction not to cite vacated opinions. *See Stroud v. Dorr-Oliver*, Inc., 112 Ariz. 403, 411, n.2 (1975) ("Once an opinion of the Court of Appeals has been vacated by this court, it is of no force and effect and is not authority."); *State v. Smyers*, 207 Ariz. 314, 318, ¶ 15 n.4 (2004) ("The courts of this state are bound by the decisions of this court and do not have the authority to modify or disregard this court's rulings."); *cf.* Michael D. Moberly, *This Is Unprecedented: Examining the Impact of Vacated State Appellate Court Opinions*, 13 J. App. Prac. & Process 231, 246 (2012) (stating that *Stroud* has not "prevented litigants from citing vacated Arizona appellate court opinions in support of their legal arguments or Arizona

courts from relying on those opinions when deciding cases"). Further, even assuming this situation might be viewed differently, we conclude that more recent authority has greater persuasive value than *Hutcherson I* on the subject of 911 dispatcher liability.

¶13 In *Greenwood v. State*, 217 Ariz. 438, 442, ¶ 15 (App. 2008), we addressed whether qualified immunity extended to the activities of DPS recordkeeping employees under § 12-820.02(A)(1). A woman died in a car accident caused by a man who had a lengthy criminal record, including several driving offenses. *Id.* at 440, ¶¶ 2–3. Her mother and an injured passenger sued the State, alleging it failed to exercise reasonable care in maintaining and disseminating the man's criminal information, and had the recordkeeping been done properly, he would have been incarcerated at the time of the accident. *Id.* at 443, ¶ 17. The plaintiffs argued that qualified immunity under § 12-820.02(A)(1) did not apply because their allegations related only to negligent recordkeeping, not the failure to arrest or retain in custody the man who caused the accident. *Id.* at 443, ¶ 15. We rejected the argument, holding that although recordkeeping activities are not included in the statute's plain language, the "essence" of the claim was a failure to arrest or retain. *Id.* at 444, ¶ 22. We reasoned that the form of the plaintiffs' allegations need not mimic the statute to trigger its applicability; otherwise, "it would encourage plaintiffs to purposely plead their claims to avoid the application of the statute." *Id.* at 444–45, ¶ 22.

¶14 To determine the essence of Harianto's allegations against Zeiher, we look to Harianto's amended complaint. But the allegations in the amended complaint, even liberally construed, do not address his theory of dispatcher liability. Instead, over the State's objections, Harianto's allegations against Zeiher were raised much later in the litigation. A supplemental disclosure statement included these opinions from Mr. Robinson, a police practices expert:

> Mr. Robinson is expected to testify that Flagstaff dispatchers had an officer, Officer Schmidt, located in the immediate area of [Horan] when contacted. That had Officer Schmidt been contacted at 4:05 a.m., he would have had 17 minutes to set up a traffic break, stop sticks, Class C Roadblock or other proactive measures to, 1) stop [Horan] , or 2) stop southbound traffic on I-17 which would have included the Harianto's vehicle.
>
> . . . .

> Mr. Robinson is expected to testify that it was neglectful for Phoenix DPS dispatchers to wait 17 minutes before contacting DPS Flagstaff dispatchers and/or Officer Schmidt as [Horan] was headed directly towards him while travelling northbound on I-17. That communication between neighboring dispatch areas is paramount to ensure public safety.

In his motion for reconsideration, Harianto stated in part that Zeiher "negligently handled this incident by not timely contacting Officer Schmidt, thus delaying his arrival, allowing the subject collision to occur."

¶15 Consistent in these allegations is the theory that had Zeiher contacted Schmidt earlier, he would have been able to stop Horan before the collision by setting up a traffic break, using stop sticks, implementing a roadblock, or other proactive measures. The purpose of those measures would have been to stop the car from moving any further in the wrong direction. Thus, the essence of Harianto's allegations is that Zeiher's delay in contacting Schmidt resulted in a failure to prevent the collision by stopping or arresting Horan before it occurred. And an alleged failure to stop or arrest plainly falls under § 12-802.02(A)(1), meaning Zeiher has qualified immunity against Harianto's allegations that she negligently handled the emergency. *See Walls*, 170 Ariz. at 595.

¶16 Further, just as *Greenwood* determined there was no meaningful distinction between the immediate activities of law enforcement officers and the recordkeeping duties that underlay law enforcement activities, the duties of 911 dispatchers are integrated into law enforcement investigation and arrest processes—and certainly to a much greater extent than recordkeepers. *See Greenwood*, 217 Ariz. at 444, ¶ 21. The immediate action required by officers to make an arrest or an investigatory stop is often based on the actions of 911 dispatchers. Indeed, in this case, the officers received updates on the wrong-way driver based on the information relayed from observers to dispatchers. Thus, consistent with *Greenwood* and *Wahl*, qualified immunity protects Zeiher under § 12-802.02(A)(1).

**CONCLUSION**

**¶17** Harianto's claims against the DPS dispatchers for negligently mishandling the emergency calls are precluded based on statutory qualified immunity. We therefore affirm the superior court's judgment.



AMY M. WOOD • Clerk of the Court
FILED: AA