IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SOUTH POINT ENERGY CENTER LLC, *Plaintiff/Appellant*,

*v.*

ARIZONA DEPARTMENT OF REVENUE, et al., *Defendants/Appellees*.

No. 1 CA-TX 20-0004
FILED 4-27-2021

Appeal from the Arizona Tax Court
No.  TX2013-000522
TX2014-000451
TX2015-000850
TX2016-001228
TX2017-001744
TX2018-000019
TX2019-000086
(Consolidated)

The Honorable Christopher T. Whitten, Judge

**VACATED AND REMANDED**

COUNSEL

Lewis Roca Rothgerber Christie LLP, Phoenix
By Patrick Derdenger, Karen M. Jurichko Lowell
*Counsel for Plaintiff/Appellant*

Dickinson Wright PLLC, Phoenix
By Bennett Evan Cooper, Vail C. Cloar
*Co-Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Kimberly J. Cygan
*Counsel for Defendant/Appellee Arizona Department of Revenue*

Arizona Attorney General's Office, Phoenix
By Jerry A. Fries
*Counsel for Defendant/Appellee Mohave County*

---

## OPINION

Judge Cynthia J. Bailey delivered the opinion of the Court, in which Presiding Judge Paul J. McMurdie and Judge Lawrence F. Winthrop joined.

---

**B A I L E Y**, Judge:

¶1 In these consolidated actions challenging the state and county's power to tax property on tribal land, South Point Energy Center, LLC ("Taxpayer") appeals the tax court's grant of summary judgment to the Arizona Department of Revenue and Mohave County (collectively, "ADOR"). For the following reasons, we vacate the judgment and remand to the tax court for further proceedings.

### FACTS AND PROCEDURAL HISTORY

¶2 Taxpayer is a non-Indian entity that owns and operates an electrical generating plant ("Facility") in Mohave County on land it leases from the Fort Mojave Indian Tribe ("Tribe").[1] Under the lease ("Lease"), Taxpayer owns "[t]he Facility and all Improvements," but at the end of the term, it will have to "remove any and all above ground Improvements and

---

[1] Taxpayer and its predecessor-in-interest have been involved in earlier actions in this court relating to property taxes on the Facility. *See Calpine Constr. Fin. Co. v. Ariz. Dep't of Revenue*, 221 Ariz. 244, 248-49, ¶¶ 17, 22 (App. 2009) (holding Taxpayer's predecessor-in-interest, not the Tribe, owned the improvements and personal property that comprise the Facility and that the predecessor-in-interest was liable for property taxes); *Ariz. Dep't of Revenue v. S. Point Energy Ctr., LLC*, 228 Ariz. 436, 441, ¶ 20 (App. 2011) (holding the Arizona Department of Revenue did not err within the meaning of the error-correction statutes in valuing the Facility).

personal property from the Leased Land," except for certain roads, foundations, and underground piping and equipment.

¶3        In 2013 and 2014, Taxpayer sued ADOR to recover property taxes paid on the Facility for the property tax years 2010-2013. ADOR moved to dismiss, arguing issue preclusion barred Taxpayer from relitigating the tax's legality and that Taxpayer was not entitled to error-correction relief, and the court entered judgment for ADOR. *See* Ariz. R. Civ. P. 12(d). After Taxpayer appealed, this court vacated the judgment and remanded for further proceedings. *See S. Point Energy Ctr., LLC v. Ariz. Dep't of Revenue*, 241 Ariz. 11, 13, ¶¶ 1-2 (App. 2016).

¶4        On remand, the tax court ultimately consolidated the cases with five other lawsuits in which Taxpayer challenged property taxes it had paid on the Facility for years 2014-2018. The court denied the parties' cross-motions for partial summary judgment on whether 25 U.S.C. § 5108 per se preempts property taxes levied on the Facility. On a second set of cross-motions, the court then ruled the Facility is not a permanent improvement exempt under § 5108 because the Lease requires Taxpayer to remove the above-ground improvements at the conclusion of the term. The court granted summary judgment to ADOR, holding that under *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 151 (1980), tribal sovereignty does not preempt taxation of the Facility.

¶5        Taxpayer timely appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21, -170(C) and -2101(A)(1).

## DISCUSSION

¶6        Taxpayer argues the tax court erred by (1) rejecting its contention that 25 U.S.C. § 5108 categorically preempts state and local property taxes on permanent improvements on leased tribal land; (2) ruling based on state law, and without briefing or hearing evidence, that the entirety of the Facility is personal property rather than permanent improvements; and (3) erroneously applying the *Bracker* interest-balancing analysis to the Facility.

¶7        We conclude the tax court erred by disregarding § 5108 and categorizing the Facility as personal property without conducting the proper analysis. We therefore vacate the judgment and remand for further proceedings consistent with this Opinion.

I.      Standard of Review

**¶8**      We review a grant of summary judgment de novo. *Jackson v. Eagle KMC L.L.C.*, 245 Ariz. 544, 545, ¶ 7 (2019).  In doing so, we view the evidence and reasonable inferences in the light most favorable to the non-moving party.  *Harianto v. State*, 249 Ariz. 563, 565, ¶ 7 (App. 2020).

II.     Whether the tax court erred by granting summary judgment to ADOR.

      A.      Whether the tax court erred by failing to apply 25 U.S.C. § 5108 to the Facility.

**¶9**      Taxpayer argues the tax court erred by failing to rule the Facility is exempt from taxes under § 5108, which, in relevant part, states that "lands or rights" taken in the name of the United States in trust for an Indian tribe "shall be exempt from State and local taxation."  Under the statute, taxation of such property is per se preempted.

**¶10**      To support its argument, Taxpayer cites four cases: *United States v. Rickert*, 188 U.S. 432 (1903), *Mescalero Apache Tribe v. Jones*, 411 U.S. 145 (1973), *Confederated Tribes of the Chehalis Rsrv. v. Thurston Cnty. Bd. of Equalization*, 724 F.3d 1153 (9th Cir. 2013), and *Seminole Tribe of Florida v. Stranburg*, 799 F.3d 1324 (11th Cir. 2015).  Of course, United States Supreme Court cases bind Arizona courts on issues of federal preemption. *See Weatherford ex rel. Michael L. v. State*, 206 Ariz. 529, 532-33, ¶¶ 8-9 (2003).  As Taxpayer recognizes, federal circuit decisions are not binding on Arizona courts. *See Plan. Grp. of Scottsdale, L.L.C. v. Lake Mathews Mineral Props., Ltd.*, 226 Ariz. 262, 267, ¶ 22 (2011).  They may be persuasive, however, *id.*, especially when they are "consistent and well-reasoned," *Filer v. Tohono O'Odham Nation Gaming Ent.*, 212 Ariz. 167, 174, ¶ 28 (App. 2006).

**¶11**      *Rickert* is the first Supreme Court case addressing state and local taxation of permanent improvements on land held in trust by the United States. 188 U.S. at 432.  In that case, two tribal members owned improvements that were built on allotted land held in trust.  *Id.*  Although *Rickert* was decided before Congress enacted § 5108, it established that a state may not tax land held in trust by the United States and that "[e]very reason that can be urged to show that the land was not subject to local taxation applies to the assessment and taxation of the permanent improvements" on such land.  *Id.* at 437-38, 442.

**¶12**      Congress enacted § 5108 in 1934 to codify *Rickert*'s holding. *See* 25 U.S.C. § 5108; *Club One Casino, Inc. v. United States Dep't of the Interior*,

328 F. Supp. 3d 1033, 1045 (E.D. Cal. 2018) ("Under Ninth Circuit authority, this Court should treat land placed in trust for a tribe pursuant to [§ 5108] . . . in the same manner as land held in trust for tribes prior to enactment of the [Indian Reorganization Act] in 1934."), *aff'd sub nom. Club One Casino, Inc. v. Bernhardt*, 959 F.3d 1142 (9th Cir. 2020), *cert. pending* (Dec. 23, 2020).

¶13        *Mescalero* then addressed whether New Mexico could impose a use tax on permanent improvements owned by an Indian entity on trust land.  411 U.S. at 146.  Applying § 5108, the Supreme Court held that the improvements, being permanently attached to the land, were "certainly . . . immune from the State's ad valorem property tax" because "use of permanent improvements upon land is so intimately connected with use of the land itself that an explicit provision relieving the latter of state tax burdens must be construed to encompass an exemption for the former."  *Id.* at 158.

¶14        In *Chehalis*, the Ninth Circuit built upon *Rickert* and *Mescalero.* 724 F.3d at 1155-56.  The tribe in question was not the sole owner of the improvements, but the court held § 5108 applies to all permanent improvements on trust land, regardless of whether they are tribal-owned. *Id.* at 1157, 1159.  The court also held that federal law governs whether the property at issue is a permanent improvement subject to § 5109.  *Id.* at 1157-58.

¶15        Finally, two years later, the Eleventh Circuit in *Seminole Tribe of Florida v. Stranburg* addressed Florida's attempt to tax rent that a non-Indian entity paid to do business on trust land.  799 F.3d at 1326.  The court concluded that § 5108 barred the rental tax because the leasehold was "so connected to the land that the tax amounted to a tax on the land itself." *Id.* at 1329.  The court held in the alternative that, although § 5108 precluded the tax, it also would be precluded under *Bracker.  Id.* at 1335.

¶16        ADOR argues *Rickert*, *Mescalero*, and *Chehalis* are inapplicable to this case because the permanent improvements in those cases were owned by Indians, while Taxpayer is a non-Indian entity.  *See Rickert*, 188 U.S. at 433; *Mescalero*, 411 U.S. at 146; *Chehalis*, 724 F.3d at 1154.  Contrary to ADOR's contention, the cited cases do not hold that the exemption applies only to Indian-owned improvements.  *See Rickert*, 188 U.S. at 442-43; *Mescalero*, 411 U.S at 158; *Chehalis*, 724 F.3d at 1159.  Indeed, as noted, *Chehalis* expressly held that § 5108 categorically bars a state tax on permanent improvements on trust land regardless of whether those improvements are owned by Indians.

**¶17**        As *Stranburg* explained at length, § 5108 forecloses taxes on "the bundle of privileges that make up property or ownership of property." 799 F.3d at 1330 (quoting *Mescalero*, 411 U.S. at 157). The court reasoned that the rental tax was effectively a tax on the tribal land subject to the lease because "[t]he ability to lease property is a fundamental privilege of property ownership." 799 F.3d at 1330. Further, viewed from the other side of the lease transaction, the rent the lessee paid to the tribe secured its "possessory interest *in the land* for the duration of the lease." *Id.* at 1331 (stating that "payment under a lease is intimately and indistinguishably connected to the leasing of the land itself"). It did not matter that the lessee that paid the tax was a non-Indian entity; the tax was barred because it amounted to a tax on the tribe's exercise of one of the privileges of owning the land. *Id.*[2]

**¶18**        Section 5108's text supports the conclusion that permanent improvements on trust land are exempt regardless of ownership. The statute states that "lands and rights" taken by the federal government in trust for a tribe are "exempt from State and local taxation," and, contrary to ADOR's assertions, no statutory language limits that exemption to Indian-owned improvements. Ownership of permanent improvements on "lands" taken in trust, accordingly, is immaterial.

**¶19**        In sum, applying the text of § 5108 and the reasoning of the several federal cases applying the statute, we conclude that a tax on any permanent improvements subject to the Lease is effectively a tax on one of the privileges of the Tribe's ownership of trust land, and therefore is barred by § 5108.

**¶20**        ADOR nevertheless argues that whether the tax is preempted is controlled not by § 5108 but instead by *Bracker*, a case that addressed a challenge to fuel taxes and motor vehicle licensing fees imposed on a non-Indian company doing business on trust land. But *Bracker* has nothing to say about property that is categorically exempt from taxation under § 5108.[3]

---

[2] ADOR argues the lease in *Stranburg* did not require the non-Indian tenant to remove improvements at the end of the lease term. That is beside the point. To the extent that the improvements at the Facility are permanent, *Stranburg* and *Chehalis* teach that § 5108 bars ADOR from collecting taxes on those improvements.

[3] Neither *Bracker* nor any of the cases ADOR cites applying *Bracker* discuss § 5108 or address permanent improvements on land held in trust by the United States. *See, e.g.*, *Bracker*, 448 U.S. at 137; *Oklahoma Tax Comm'n v.*

As *Bracker* itself explained, there are "two independent but related barriers to the assertion of state regulatory authority over tribal reservations and members." 448 U.S. at 142. The first barrier is preemption by "federal law." *Id.* The second is unlawful infringement "on the right of reservation Indians to make their own laws and be ruled by them." *Id.* (quoting *Williams v. Lee*, 358 U.S. 217, 220 (1959)). "[E]ither [barrier], standing alone, can be a sufficient basis for holding state law inapplicable to activity undertaken on the reservation or by tribal members." *Id.* at 143; *see Stranburg*, 799 F.3d at 1335 (after holding the rental tax violated § 5108, but before addressing *Bracker*, noting that "[w]e could, of course, stop our analysis regarding the Rental Tax at this point").

¶21 ADOR cites a rule issued by the Bureau of Indian Affairs that it contends supports its assertion that *Bracker* applies to permanent improvements owned by non-Indians on leased land. 25 C.F.R. § 162.017; *see* Residential, Business, and Wind and Solar Resource Leases on Indian Land, 77 Fed. Reg. 72,439 (Dec. 5, 2012). However, neither § 162.017 nor the Bureau's explanation of it supports ADOR's argument. Section 162.017 provides:

> (a) *Subject only to applicable Federal law*, permanent improvements on the leased land, without regard to ownership of those improvements, are not subject to any fee, tax, assessment, levy, or other charge imposed by any State or political subdivision of a State. Improvements may be subject to taxation by the Indian tribe with jurisdiction.

> (b) *Subject only to applicable Federal law*, activities under a lease conducted on the leased premises are not subject to any fee, tax, assessment, levy, or other charge (e.g., business use, privilege, public utility, excise, gross revenue taxes) imposed by any State or political subdivision of a State. Activities may be subject to taxation by the Indian tribe with jurisdiction.

> (c) *Subject only to applicable Federal law*, the leasehold or possessory interest is not subject to any fee, tax, assessment, levy, or other charge imposed by any State or political

---

*Chickasaw Nation*, 515 U.S. 450, 457-58 (1995) (motor fuels excise tax); *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 187-89 (1989) (severance tax on the production of oil and gas).

subdivision of a State. Leasehold or possessory interests may be subject to taxation by the Indian tribe with jurisdiction.

(Emphasis added.)

¶22        ADOR contends that the "subject only to applicable Federal law" language refers to *Bracker*.  Although we agree that *Bracker* constitutes "federal law," "federal law" also includes § 5108 and the cases applying that statute, including *Rickert*, *Mescalero*, *Chehalis*, and *Stranburg*.

¶23        The rest of the regulation's language also supports our interpretation.  The regulation unambiguously says, "permanent improvements on the leased land, without regard to ownership of those improvements, are not subject to any fee, tax, assessment, levy, or other charge imposed by any State or political subdivision of a State."  25 C.F.R. § 162.017(a).  Because federal law—including *Rickert*, *Mescalero*, *Chehalis*, and *Stranburg*—does not conflict with this language, the regulation's language supports our interpretation of § 5108.  The Bureau of Indian Affairs's explanation of the rule also supports our interpretation of § 162.017(a).  *See* 77 Fed. Reg. at 72,448 (stating that because permanent improvements are "affixed to the land," "a property tax on the improvements burdens the land, particularly if a State or local government were to attempt to place a lien on the improvement," and "State and local taxation of improvements undermine Federal and tribal regulation of improvements").

¶24        Because we have concluded that § 5108 categorically exempts any permanent improvements subject to the Lease, we need not determine whether taxes imposed on those permanent improvements also would be barred under a *Bracker* analysis.  We next examine whether the tax court erred by ruling that the entirety of the Facility is personal property, not permanent improvements to which § 5108 would apply.

      B.    Whether the tax court erred by ruling the entirety of the improvements are non-permanent and not subject to 25 U.S.C. § 5108.

¶25        Taxpayer argues the tax court erred by concluding without the benefit of briefing or evidence that the entirety of the Facility is personal property not subject to § 5108.  It contends this ruling violated "the principle of party presentation."

¶26        "In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party

presentation." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). "That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Id.* Although the principle of party presentation is "supple, not ironclad," *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020), "as a general rule, '[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief,'" *Greenlaw*, 554 U.S. at 244 (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)). Although violation of this principle does not constitute reversible error, the rationale behind the principle is particularly applicable here. *See Sineneng-Smith*, 140 S. Ct. at 1579, 1581 ("[A] court is not hidebound by the precise arguments of counsel.").

¶27 During the second round of summary judgment briefing, the parties agreed that the Facility contained both personal property and permanent improvements. The tax court nevertheless concluded the Facility was entirely personal property, based upon the Lease provision that requires Taxpayer to remove all above-ground improvements at the end of the term. As the court reasoned, "[i]f [Taxpayer] retain[ed] the right to remove an improvement, that improvement is by definition not a permanent improvement." In making this ruling, however, the tax court disregarded the principle that federal law, not state law, determines whether specific property is a permanent improvement exempt from taxation under § 5108. *See Drye v. United States*, 528 U.S. 49, 52 (1999) (holding that what constitutes "property [and] rights to property" for purposes of a federal tax statute is determined by federal law, not state law); *Chehalis*, 724 F.3d at 1158 (stating "it is irrelevant whether permanent improvements constitute personal property under [state] law"). Under federal tax law, whether an asset is a permanent improvement or personal property turns on six factors set out in *Whiteco Indus., Inc. v. Comm'r*, 65 T.C. 664 (1975). *See PPL Corp. v. Comm'r*, 135 T.C. 176, 193 (2010); *see also Trentadue v. Comm'r*, 128 T.C. 91, 99 (2007).

¶28 The *Whiteco* factors primarily focus on "the permanence of depreciable property and the damage caused to it or to realty upon removal of the depreciable property." *Trentadue*, 128 T.C. at 99. The factors are: (1) "Is the property capable of being moved, and has it in fact been moved?"; (2) "Is the property designed or constructed to remain permanently in place?"; (3) "Are there circumstances which tend to show the expected or intended length of affixation, i.e., are there circumstances which show that the property may or will have to be moved?"; (4) "How substantial a job is removal of the property and how time-consuming is it? Is it 'readily

removable'?"; (5) "How much damage will the property sustain upon its removal?"; and (6) "What is the manner of affixation of the property to the land?" *Whiteco*, 65 T.C. at 672-73.

**¶29**     Under *Whiteco*, although the existence of a contract requiring removal of the property is relevant, it is not determinative. *See id.* (considering contract term under factors (2) and (3)). The tax court accordingly erred by concluding the Facility was "by definition" not a permanent structure without conducting a *Whiteco* analysis.

## CONCLUSION

**¶30**     Because we conclude that 25 U.S.C. § 5108 establishes a categorical exemption for permanent improvements on Indian land held in trust by the United States, and that the tax court erred by concluding the Facility was entirely personal property without conducting the proper analysis, we vacate the court's grant of summary judgment to ADOR. We remand this case to the tax court to conduct a *Whiteco* analysis to determine which, if any, of the assets that make up the Facility are permanent improvements that therefore are exempt from taxation under § 5108. The court then should consider whether property taxes on the assets that are not permanent improvements are preempted under *Bracker. See Mashantucket Pequot Tribe v. Town of Ledyard*, 722 F.3d 457, 459-60 (2nd Cir. 2013) (applying *Bracker* analysis to state personal property tax).



AMY M. WOOD • Clerk of the Court
FILED:     AA